St. Louis Southwestern Railway Company of Texas v. T. W. Murdock.

Decided February 27, 1909.

**1.—Personal Injury—Mental Shock.**

Where it appears that the natural tendency of a mental shock is to produce the character of injury charged and shown, it will be regarded in law as one which should have been foreseen.

**2.—Same—Physical Injury Resulting from Fright.**

In order to constitute a physical injury resulting from fright, it is not essential to show that the mental emotion produced an actual rupture or change in the substance of some organ or part of the body.

**3.—Same.**

Where it was shown by the testimony that plaintiff's wife suffered a severe shock from the fright occasioned her by the wrongful act of the operatives of a train in backing it while she was upon a crossing; that she was about five months advanced in pregnancy; that almost immediately after receiving the fright she experienced severe pains in her back; that on reaching her home, a short distance away, she was unable to alight without assistance and was

confined to her bed for one month, during which time she suffered with pain in the back, head and other parts of her body and was so seriously threatened with a miscarriage that it was only averted by medical treatment and absolute quiet; that although the birth of her child was normal she was compelled to remain in bed longer than is usual, and that her trouble was neurasthenia, a disease produced by shock to the nervous system, it was for the jury to determine whether she had received any physical injury as the result of the fright, and whether such injury ought to have been foreseen by those operating the train.

Appeal from the District Court of Hunt County. Tried below before Hon. T. D. Montrose.

*E. B. Perkins, D. Upthegrove* and *Templeton, Crosby & Dinsmore,* for appellant.—The rule of liability in cases of this kind was laid down by our Supreme Court in the Hayter case, 93 Texas, 242, in this language: "Where a physical injury results from a fright or other mental shock, caused by the wrongful act or omission of another, the injured party is entitled to a recovery of damages provided the act or omission is the proximate cause of the injury, and the injury ought, in the light of all the circumstances, to have been foreseen as a natural and probable consequence thereof."

Our contention is that the injury is not physical unless there is some change in the substance of some part of the body. The trial court refused our special charge which presented this contention, evidently being of the opinion that a nervous shock creating a physical disturbance constituted a physical injury, though not accompanied by any change in any part of the body. If this is correct, then every fright case is actionable. In every case of fright there is more or less physical disturbance. A real fright is always followed by increased heart action, excitement of the nerves, and by feelings of faintness and weakness. It is almost invariably accompanied by some mental pain or distress, and not unfrequently by actual physical pain. It is true that such disturbances are generally neither intense nor prolonged. The distinction between the ordinary fright case and the case at bar is not in the character of the disturbance but in the length and severity of it. But the existence of the right of action depends altogether on the character of the disturbance and not at all on the duration and intensity thereof. On the other hand, the damages recoverable are measured by the duration and intensity of the disturbance, not by the character of it. If the action of the trial court in this case in refusing our requested charge, and in authorizing and permitting a recovery without proof of any physical change, is correct, then a recovery can not be denied in any case of fright where any character of physical disturbance results, and there is necessarily some such disturbance in every case of fright. It passes our comprehension how it can be said that there is a physical injury without any change in any part of the body, without any alteration in the substance of the body. A recovery must be permitted in all cases of fright or the line must be drawn at this point.

It is held in Hill v. Kimball, 76 Texas, 210, that the petition showed a good cause of action. But an actual miscarriage was alleged, and no one would question the fact that this would constitute a physi-

cal injury. The judgment in the Hayter case, *supra,* was affirmed, but in that case the Supreme Court did not pass upon the facts, the case being decided by the court upon a naked legal question. The Supreme Court has since taken occasion to declare that its decision in the Hayter case is not authority upon the sufficiency of the facts to authorize a recovery.

Even if there was a physical injury and the same was caused by the negligence of defendant's servants in charge of the train in question, it does not follow that the plaintiff is entitled to recover. Even then, his recovery would depend upon whether the defendant's servants in charge of the train in question ought, in the light of all the circumstances, to have foreseen that the injury alleged and proven would be the natural and probable consequence of their negligence.

In the Barry case, 98 Texas, 250, it was alleged and proved that the plaintiff and his family were driven from their home by an overflow, caused by the improper construction of a dump, and exposed to inclement weather; that plaintiff's wife was then in a state of pregnancy, and when the water backed up around their home and into the house it greatly frightened her, causing her to think she and the other members of the family would be drowned, and produced physical and mental injury and pain; that she was thereby made sick, confined to her bed for weeks, suffered a great shock to her nerves and was threatened with miscarriage, etc. The court said: "The damages claimed in this particular we think entirely too remote. While in constructing its dump the defendant company should have foreseen that in case the sluice and waterway provided should prove insufficient to allow a free passage of water, it might cause an overflow and damage to property situated near thereto and upon the upper side thereof, it could not reasonably have anticipated that the conditions would be such as to cause such a degree of fright to any one as to produce sickness or other physical injury. We think the case falls strictly within the principles announced in several cases in this court, namely, that a party guilty of a negligent act is not responsible for such consequences of that act as could not have been reasonably anticipated.

*J. S. Sherrill* and *B. Q. Evans,* for appellee.—It was not necessary that the servants of the defendant should have foreseen the particular injury that did occur. It is sufficient if they should have foreseen that some like injury might, and probably would, occur. The servants of the defendant in charge of the train knew, or should have known, that backing the train toward plaintiff's wife in the manner shown by the evidence, was calculated to frighten and would frighten her, and, under the circumstances, should have foreseen that such fright would probably result in some physical injury to her. Railway Co. v. Mitchell, 60 S. W., 891; Railway Co. v. Hayter, 93 Texas, 239; Railway Co. v. Bigham, 90 Texas, 223.

The evidence in this case shows that plaintiff's wife received severe physical injuries as the direct result of fright caused by the negligence of defendant, and brings the case clearly within the rules laid down in Railway Co. v. Hayter, 93 Texas, 242, and Railway Company v. Mitchell, 60 S. W., 891.

TALBOT, ASSOCIATE JUSTICE.—T. W. Murdock brought this suit against the St. Louis Southwestern Railway Company of Texas to recover damages for injuries resulting to his wife from fright occasioned her by the negligence of the railway company's servants in the operation of a train at a street crossing in the city of Greenville. The defendant pleaded the general issue and contributory negligence. A jury trial resulted in a verdict and judgment in favor of the plaintiff for $1,000, and the defendant appealed.

The evidence was sufficient to establish the following facts: On the evening of November 8, 1906, while the plaintiff was driving in a one-horse hack or wagon along Lee street in the city of Greenville with his wife and child, he approached the point where the defendant's railroad crosses said street. There was a freight train standing across the street and plaintiff drove up within about ten feet of it and stopped. After waiting about twenty minutes for the train to be removed from the crossing he called to a brakeman on the train to open up the crossing so he could pass over. The brakeman then uncoupled the cars and signaled the engineer, and that portion of the train immediately on and north of the crossing was moved forward about ten feet, leaving a sufficient opening for plaintiff to drive over the crossing. When this was done the brakeman told plaintiff to "come ahead," and plaintiff, with his wife and child in the wagon, drove on the crossing. About the time the horse and vehicle got on the railroad track the cars attached to the engine, and which had been moved forward to enable plaintiff to pass, were negligently backed toward him, and he whipped up his horse and got over the crossing just before the two sections of the train came together, he and his wife and child narrowly escaping being caught and crushed between the cars. Seeing their danger Mrs. Murdock became very much frightened, and turning suddenly and quickly in her seat, caught hold of her husband and said, "We are all going to be killed." Mrs. Murdock was about five months advanced in pregnancy and, almost immediately after receiving the fright, experienced severe pains in her back, and when her home was reached, which was distant from the crossing only about four hundred yards, she was unable to get out of the wagon without the assistance of her husband and was confined to her bed about one month. During this time she suffered with pain in her back, head, and other portions of her body, and was threatened with a miscarriage. So serious was the threatened miscarriage that it was only averted by the medical treatment received from her physician and absolute quiet. The birth of the child, however, was normal, though Mrs. Murdock, on account of the prostration, was compelled to remain in bed longer than is usual in such cases. Her physician testified, "I pronounce her trouble to be neurasthenia, a disease which is produced by shock to the nervous system; the fright would upset her sympathetic nerves. I would attribute the upsetting of the nervous system to the fright. It is very common for this nervous condition to be produced by a traumatic blow or by actual fright." From the time of the fright up to the trial of this case Mrs. Murdock has been very nervous and suffered more or less pain in the back as a result of the fright, and the probabilities are that she will continue to so

suffer. We further find that the fright occasioned Mrs. Murdock and the injuries resulting therefrom may reasonably have been anticipated by defendant's servants in charge of the train as the natural and probable consequences of their negligent act in backing the train while plaintiff was on the crossing, and that the plaintiff was not guilty of contributory negligence.

The propositions contended for by appellant under its several assignments of error may be stated as follows: (1) That the evidence shows that the defendant's servants in charge of the train in question did not and could not under the circumstances foresee any of the injuries alleged and proved by plaintiff as a natural and probable consequence of their alleged negligence, therefore the trial court erred in overruling defendant's motion for a new trial based on that ground; (2) that the evidence was not sufficient to show that plaintiff's wife received any physical injury as a result of fright, but on the contrary shows that her physical disabilities or affections were in all probability the result of natural causes, and therefore the trial court erred in refusing defendant's motion for a new trial based on that ground; (3) that mere mental distress caused by fright is not a physical injury; that in order to constitute a physical injury the substance of some organ or part of the body must be actually injured in some way, and the court erred in refusing to give a requested charge so instructing the jury.

We are of the opinion that under the facts in this case neither of the foregoing propositions should be sustained. That Mrs. Murdock suffered a severe mental shock from the fright occasioned her by the wrongful and negligent act of defendant's servants in backing the train while she and her husband were upon the crossing in question was established beyond controversy, and that some character of physical injury resulted to her from such shock as a proximate result thereof, and which in the light of the attending circumstances ought to have been foreseen as a natural and probable consequence thereof, may reasonably be inferred from the evidence. The impairment of her health seems to be permanent, and a continuation of the physical pain suffered as a result of the fright very probable. Mrs. Murdock testified that nothing struck her so far as she knew, but that she knew her back and spinal column were injured; that while she did not know, yet something may have wrenched her back, that she knew she "was suffering and suffered terribly." She said, however, that she did not know that her back was wrenched. She further testified that her ability to do her housework since the fright had been greatly impaired; that before being frightened she was accustomed to washing and ironing, sewing and cooking and making beds; that since that time she had been able to do but little of such work; that it hurt her back and the muscles of her womb to sew, and that she could not sew. Dr. French said: "After a fright I always look for a miscarriage; excessive fright is a common cause of miscarriage. I think Mrs. Murdock will always be nervous. I do not think she will ever be able to work all day. She will give out before night." His testimony is to the further effect that the fright upset Mrs. Murdock's sympathetic nerves; that it was very common for the nervous condi-

tion in which he found Mrs. Murdock, and her threatened miscarriage, to be produced by actual fright; that if she was sitting on the seat by the side of her husband at the time she was frightened, and when the train started "she jerked around and twisted," he would attribute her condition to actual fright, but that the jerk might have aided in bringing about that condition; that he did not think a permanent cure of Mrs. Murdock would be effected, but that he "would get her so she could stay up the most of the time and improve her some." We conclude the evidence upon the whole brings the case strictly within the rule laid down in the case of Gulf, C. & S. F. Ry. Co. v. Hayter, 93 Texas, 239. That case, as we understand it, recognizes that a physical injury, such as is meant in the rule therein announced, may result from a mental shock, but does not go to the extent of holding that the testimony must show, in order to constitute such injury, that the mental emotion produced an actual rupture or change in the substance of some organ or part of the body, and we think it is not essential that it should. Such seems to be the view of those courts holding that there can be no recovery for a physical injury caused by fright. This doctrine has been rejected by the Supreme Court of this State. In the Hayter case Chief Justice Gaines says: "We have been unable to discover any substantial difference between the case where an injury has been inflicted through physical agencies and one in which a mental emotion constitutes one of the links in the chain of causes which have led to the injuries resulting therefrom." In that case there seems to have been produced in the subject of the shock only a weakening of the nerve and muscular force, or nervous prostration, and a judgment in his favor was affirmed. But whether a more pronounced physical injury was shown than this in the Hayter case or not, yet we think the evidence in the present case of physical injury to Mrs. Murdock as a result of the fright caused her through the negligence of appellant's servants, was sufficient to meet in that particular the requirements of the rule announced in the Hayter case. Whether or not Mrs. Murdock had in fact sustained a physical injury as the result of such fright and the negligence of appellant's servants, and whether such negligence was the proximate cause of such injury, and the injury ought to have been foreseen by appellant's servants, were questions fairly submitted to the jury for their determination by the court's general charge and special charges requested by the appellant. These charges fully covered the law applicable to the facts of the case, and the special charge requested by appellant embracing the proposition designated in the former part of the opinion as its third proposition, was correctly refused.

With respect to the sufficiency of the evidence to show that appellant's servants, whose negligent act caused Mrs. Murdock to become frightened, ought to have foreseen as a natural and probable consequence thereof the injury sustained by her, the case of St. Louis S. W. Ry. Co. v. Mitchell, 25 Texas Civ. App., 197, in which a writ of error was denied by the Supreme Court, seems to be especially in point. In that case the plaintiff and his wife were riding in a two-horse wagon, and while driving across the railway company's track at a public crossing a passing train came very near striking

them. Mrs. Mitchell was pregnant, and as a result of the fright occasioned her by reason of the narrow escape from being struck by the train, she miscarried. There was no proof that the employes of the railway company operating the passing train knew she was pregnant, but it was held that where it appears, as it does in the present case, that the natural tendency of a mental shock is to produce the character of injury charged and shown, it will be regarded in law as one which should have been foreseen. We think the judgment of the court below should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.