Argued February 18, reversed March 9, 1915.

## SALMI *v.* COLUMBIA & N. R. R. CO.*

(146 Pac. 819.)

**Explosives—Personal Injuries—Fright the Proximate Cause of Injury.**

1. Where defendant negligently exploded a large blast of powder near plaintiff's residence, frightening her so that she fainted and fell to the floor and thereby seriously injured herself, defendant was liable for such resulting injury as against the contention that it was caused by sudden fear.

[As to liability for keeping or storing explosives, see note in 67 Am. St. Rep. 134.]

**Trial—Instructions—Assumption of Facts—Personal Injuries.**

2. Instructions, stating that the issues were whether the injury complained of by plaintiff was caused by an explosion, and if so caused was a proximate result, and whether plaintiff was guilty of negligence contributing to the injury, and an instruction that in considering the damages the jury would consider the pain and suffering plaintiff had endured and would endure as a natural result of the injury she received, it also considered the impairment of health

---

*Upon the right to recover for physical injury resulting from fright caused by a wrongful act, see notes in 3 L. R. A. (N. S.) 49; 22 L. R. A. (N. S.) 1073, and 24 L. R. A. (N. S.) 1159.        REPORTER.

through the injury she received, were defective in assuming, in spite of the general issue, that plaintiff had received actual injury.

**Damages—Issues—Pleading, and Proof—Aggravation of Previous Injury.**

3. Where plaintiff did not plead the aggravation of a previously existing injury, she was not entitled to recover therefor.

**Explosives—Personal Injuries—Evidence.**

4. Where plaintiff alleged that defendant negligently exploded a large blast near her premises, frightening her so that she fell and was injured, it was not error to permit witnesses to describe the condition of plaintiff's premises as to deposit of débris thereon soon after the occurrence.

> [As to right to recover damages for bodily pain and suffering resulting from fright without actual physical violence, see note in Ann. Cas. 1913E, 505.]

**Explosives—Personal Injuries—Fright—Evidence.**

5. It was error to allow plaintiff to testify to an alleged promise of defendant's manager to plaintiff's husband that no blasting would occur while the husband was away from home.

From Columbia: JAMES A. EAKIN, Judge.

Department 1.   Statement by MR. JUSTICE BURNETT.

This is an action by Sophia Salmi against the Columbia & Nehalem River Railroad Company, a corporation.

It appears from the record that the line of the defendant's road passes the residence of the plaintiff within 150 feet, but considerably higher up a steep hillside. The complaint states in substance that on June 6, 1913, the defendant caused a large and unsafe blast of powder or dynamite to be exploded immediately above her residence on the right of way, well knowing at the time that the plaintiff and her two daughters were in' the house, and having negligently advised them to go into the back bedroom, which was farthest away from the right of way, until the blast should be discharged. The plaintiff charges that they accepted this counsel and thereupon took refuge in the

room and remained there until the blast was set off. She then alleges:

"That by reason of said blast, aforesaid, a great and large amount of rock, earth, stumps, and débris was hurled and thrown with great force and violence at and down upon the residence of the plaintiff and the room then and there occupied by the plaintiff and her two daughters, by reason of which negligent and wrongful act the plaintiff was greatly frightened and was rendered unconscious, thereby falling in a swoon, upon the floor, by reason of which she sustained a painful, severe and permanent injury, to wit, a large and painful rupture of the umbilicus resulting in a large and painful umbilical hernia, from the effects of which she has suffered great and excruciating physical and mental pain and suffering and from the effects of which she has ever since been prevented from attending properly to her household and other duties.

She claims damages in the sum of $4,600.

For a second cause of action the complaint recites a similar occurrence happening November 12, 1913, attended by another swoon of the plaintiff and the increase of the previous hernia, all to her damage in a sum set forth, together with certain special damages which she avers.

The answer traversed the allegations of the complaint. The defendant also declares that in the progress of the work of clearing the right of way the contractor of the defendant put in a proper charge of powder, gave the plaintiff due warning that in 30 minutes the blast would be set off, and requested her to retire to a distance beyond which any rocks or débris could be thrown by the unheaval; but that she carelessly and negligently determined to remain in the house, so that any fright or injury suffered by her was due to her own negligence. The general issue and the

defense of independent contractor were interposed to the second cause of action.

The new matter in the answer was denied by the reply. A judgment resulted in favor of the plaintiff after a jury trial, and the defendant appealed.

REVERSED.

For appellant there was a brief over the names of *Messrs. Veazie, McCourt & Veazie* and *Mr. Joseph W. Day,* with an oral argument by *Mr. John McCourt.*

For respondent there was a brief and an oral argument by *Mr. Glen R. Metsker.*

MR. JUSTICE BURNETT delivered the opinion of the court.

1. Among other things, it is charged that the immediate cause of injury was the sudden fear of the plaintiff for which no action lies. Many authorities are cited to sustain the proposition that for mere fright without an attendant or resulting physical injury a cause of action will not lie, although subsequently physical ailments result. A careful analysis of the plaintiff's allegations on that point leads to the conclusion that she does not claim damages for the alarm she describes, but only relies upon it as one link in the chain of causation culminating in the actual physical hurt of which she complains. The lighted squib caused no damage to the person upon whom it first fell; but the individual who started its flight set in motion an agency which, operating naturally and hence in a manner reasonably to be anticipated, ultimately produced harm for which he was liable to the person injured. So in this case, if the testimony for the plaintiff is to be credited, the defendant inaugurated

violent action by blasting which operated at once upon her mentality, producing swoon followed in unbroken and immediate sequence by her fall upon an upturned stool, resulting in the trauma of hernia for which she claims damages. This constitutes the attendant or eventuating physical injury prescribed by most, if not all, the precedents cited by the defendant as a condition of recovering damages where fright is involved.

It is quite the ordinary thing, and a result to be expected, that a woman would be frightened by a loud explosion, especially when attended by débris falling all around her and into the very house where she was. The rest follows in normal succession. The instinct of self-preservation, a mental phenomenon, induced B. to throw off the squib which had fallen upon him. The immediate result was the injury charged upon A., who first threw the missile. Likewise in this instance the explosion of the blast naturally produced the mental state of fright, the fright the faint, the faint the fall, the fall the fracture of the abdominal wall, upon which the plaintiff rests her cause of action, all following in a close and immediate series. In the illustration of the squib, as well as in the concrete case before us, mental disturbance formed a link in an unbroken chain of causation created by the initial negligent act of the defendant, producing a result for which reason and as we believe the weight of authority holds it responsible.

Human emotions and other mental states naturally have a powerful influence upon human action and are factors which cannot be left out of the account. They must be reckoned as part of the necessary sequence of intermediate causes. It is a basic principle that, if the cause set in motion by the defendant operates continuously and directly upon another agency which as a necessary consequence affects a still different force by

which injury is inflicted, the author of the initial cause is responsible for the final result. The difficulty lies in the application of this fundamental doctrine. The authorities are apparently in hopeless conflict on this question, but it is believed that proper discrimination will reconcile them in this manner. If, under all the circumstances in the exercise of ordinary care, a person can discern that his act will naturally and probably result in harm of some kind to another, but not necessarily foreseen as to the exact form of injury, the former is liable in damages for the ensuing casualty. On the contrary, if no harmful result can reasonably be expected, or if there is no natural connection between the act of the defendant and the injury alleged, no action will lie.

In this case, considering that a large blast was set off within 150 feet of the plaintiff's house from the overhanging hillside, the jury was authorized to find that the defendant could have foreseen that some sort of injury was liable to happen to the inmates of that house, so that it would be liable for such hurt in whatever form it occurred, however extended the concatenation of causes between its initial act and the resulting injury. On this branch of the case, Mr. Chief Justice WINSLOW, in *Bankopf* v. *Hinkley,* 141 Wis. 146 (123 N. W. 625, 24 L. R. A. (N. S.) 1159), tersely says:

"The principle here decided is that when physical injury flows directly from extreme fright or shock, caused by the ordinary negligence of one who owes the duty of care to the injured person, such fright or shock is a link in the chain of proximate causation as efficient as physical impact from which like results flow."

The following citations justify the conclusion here set down: *Gulf, C. etc. Co.* v. *Hayter,* 93 Tex. 239 (54 S. W. 944, 77 Am. St. Rep. 856, 47 L. R. A. 325) ; *Kimberly* v. *Howland,* 143 N. C. 398 (55 S. E. 778, 7 L. R. A. (N. S.) 545) ; *Pankopf* v. *Hinkley,* 141 Wis. 146 (123 N. W. 625, 24 L. R. A. (N. S.) 1159) ; *Chesapeake & Ohio Ry. Co.* v. *Robinett,* 151 Ky. 778 (152 S. W. 976, 45 L. R. A. (N. S.) 433) ; *Hendrix* v. *Texas Pac. Ry.,* 40 Tex. Civ. App. 291 (89 S. W. 461) ; *Simone* v. *Rhode Island Co.,* 28 R. I. 186 (66 Atl. 202, 9 L. R. A. (N. S.) 740) ; *Armour & Co.* v. *Kollmeyer,* 161 Fed. 78 (88 C. C. A. 242, 16 L. R. A. (N. S.) 1110) ; *St. Louis S. W. Ry.* v. *Murdock,* 54 Tex. Civ. App. 249 (116 S. W. 139) ; *Arthur* v. *Henry,* 157 N. C. 438 (73 S. E. 211) ; *Spearman* v. *McCrary,* 4 Ala. App. 473 (58 South. 927). A valuable note on the subject appears in 3 L. R. A. (N. S.) 49, appended to *Huston* v. *Freemansburg,* originally reported in 212 Pa. 548 (61 Atl. 1022), although the case itself indicates an opinion opposed to that here expressed.

It has been decided in some instances that if one, in the commission of an unlawful act, excites in the mind of another a reasonable apprehension of personal danger, and in the endeavor of the latter to escape his own act is the immediate cause of his death, the former is criminally responsible as for homicide: *Cox* v. *People,* 80 N. Y. 500; *Adams* v. *People,* 109 Ill. 444 (50 Am. Rep. 617) ; *Norman* v. *United States,* 20 App. D. C. 494; *State* v. *Shelledy,* 8 Iowa, 477. Such cases clearly recognize the induced fright as one of the train of causes set in operation by the defendant and culminating in the homicidal crime. The analogy holds good in civil cases where the wrong complained of is inaugurated by a negligent act of the defendant and continues naturally through various concomitant and

succeeding causes, including fright of the plaintiff, to the injury in question.   If criminal liabilty can be imputed in one case, civil accountability certainly attaches in the other.

2. The defendant contends that the trial court erred in its instruction to the jury, excepted to by the defendant, in assuming, in spite of the general issue, that the plaintiff had received an actual injury.   In stating the case to the jury on the first cause of action the court said:

"The issues for you to determine on that first cause of action are: (1) Was the defendant negligent in exploding the blast complained of?   (2) Was the injury complained of by plaintiff caused by such an explosion, and, if so caused, was it the natural and proximate result of such explosion?   (3) Was the plaintiff guilty of any negligent or wrongful act which contributed to and helped cause the injury?"

Whether the injury happened at all is thus omitted from the calculation.   This assumption of hurt seems to have run through the whole charge.   A single excerpt on that subject is sufficient.   Referring to the assessment of damages, the court said:

"In considering that question you are to take into consideration the pain and suffering the plaintiff Mrs. Salmi has endured and will endure as the natural result of the injury she received.   You are also to take into consideration the impairment of health * * through the injuries she received for such time as * * her health has been impaired and will be impaired by reason of her injury, which impairment of health has prevented her from attending to or performing her usual and ordinary work, and also her pain and suffering which naturally results from the physical impact as a consequence of the injury received. * * "

In thus assuming that the plaintiff had received an injury, the court was in error: *Yarnberg* v. *Watson,* 13 Or. 11 (4 Pac. 296); *Kelly* v. *Highfield,* 15 Or. 277 (14 Pac. 744); *Salomon* v. *Cress,* 22 Or. 177 (29 Pac. 439); *Owens* v. *Snell,* 29 Or. 483 (44 Pac. 827); *Savage* v. *Savage,* 36 Or. 268 (59 Pac. 461); *West* v. *Mc-Donald,* 67 Or. 551 (136 Pac. 650).

3. Again, it was urged by the defendant that the plaintiff was afflicted with rupture prior to the June explosion, and there was evidence proper to be submitted to the jury on that subject. Apropos of this, the defendant requested the court to charge the jury in substance that, not having pleaded the same, the plaintiff could not recover for aggravation of a rupture existing prior to the first explosion; but the court refused to so instruct. This is error within the doctrine of *Maynard* v. *Oregon R. R. Co.,* 46 Or. 15 (78 Pac. 983, 68 L. R. A. 477); *Dorn* v. *Clarke-Woodward Drug Co.,* 65 Or. 516 (133 Pac. 351); *Boatright* v. *Portland Ry., L. & P. Co.,* 68 Or. 26 (135 Pac. 771).

4, 5. We think there was no material error in allowing the plaintiff's witnesses to describe the condition of her premises as to the deposit of débris thereon when they were there soon after the occurrence complained of, especially as there was other testimony tending to show that the state of the property was the same as at the time of the explosion. It was helpful in determining the force of the blast and its effectiveness in frightening the plaintiff into the faint she describes. It was erroneous to allow testimony concerning an alleged promise of the defendant's local manager to the plaintiff's husband that no blasting would occur while the latter was away from home. The action is not predicated upon a breach of contract, but is one of pure tort, and hence the testimony should

be confined to the issues set out in the pleadings. On the main question presented it was proper to hold that fright should be reckoned as one of the causes in the succession leading to the injury; but, for the error of assuming the existence of hernia caused by the defendant, the admission of testimony about the manager's promise and the refusal to instruct the jury against assessing damages for aggravation of a previous trauma, the judgment is reversed and a new trial ordered.                                    REVERSED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE MCBRIDE and MR. JUSTICE BENSON concur.