**WEDGWORTH v. CITY OF FORT WORTH.**
No. 14693.

Court of Civil Appeals of Texas,
Fort Worth.

June 8, 1945.

V. K. Wedgworth, of Fort Worth, pro se.

R. E. Rouer, Heard L. Floore, Langford Carlton, and Sam A. Woodward, all of Fort Worth, for appellee.

McDONALD, Chief Justice.

This suit was filed by appellant. Relief was sought on several counts, the nature of which will appear from our discussion of the exceptions addressed by defendant to plaintiff's petition.

Appellee filed what it termed a plea in abatement, and three special exceptions. The judgment recites that the plea in abatement and the special exceptions were heard, that all were sustained, that plaintiff declined to amend, and that the suit was dismissed.

The so-called plea in abatement is in substance a plea of res adjudicata. The contention made in it is that the same matters set out in plaintiff's petition were adjudged in a prior suit. The prior suit was a tax suit, prosecuted by the City of Fort Worth and other taxing authorities. Appellant filed in the tax suit a cross-action in which he set up the same matters later alleged in the petition filed by him in the present suit. Appellee filed in the tax suit certain special exceptions to appellant's cross-action. Said special exceptions were based in part upon the theory that the matters set forth in appellant's cross-action were not proper matters to be litigated in a tax suit, in part upon the theory that the allegations of the cross-action were insufficient to state any cause of action, and in part upon the theory that the allegations of the cross-action showed that the claims therein set forth were barred by the statutes of limitation. According to the judgment rendered in the tax suit, a copy of which is made an exhibit to appellee's plea in abatement filed in the present suit, all of appellee's exceptions filed in the tax suit were sustained. Appellee claims, therefore, that the action of the trial court in sustaining the exceptions to appellant's cross-action constituted an adjudication of appellant's claims therein alleged, such as will bar the prosecution of the present suit.

■ This is the third time the controversies presented in such cross-action, and in the suit now on appeal, have been before this court. After the trial court dismissed appellant's cross-action in the tax suit, appellant sought by an original mandamus proceeding filed here to compel the trial court to try his cross-action in the tax suit. See Wedgworth v. Davenport, Tex.Civ.App., 170 S.W.2d 789. Appellant later appealed from the judgment rendered in the tax suit. Our opinion in that case was not published. Rule 452, Texas Rules of Civil Procedure. From the record now before us, considered in the light of the records in the two other proceedings in our court, just mentioned, it appears that appellant's cross-action in the tax suit was dismissed because it had no proper place in the tax suit, and that the action of the trial court in dismissing it under such circumstances will not support a plea of res adjudicata in the present suit. As has been said, appellant sought in the mandamus proceeding to compel the trial court to try the cross-action in the tax suit. Appellee successfully opposed that effort, and is not in position now to say that the matters set forth in such cross-action were litigated in the tax suit.

The action of the trial court in the present case, in sustaining both the plea in abatement and the special exceptions, may in a sense have been inconsistent. But it would be an idle gesture to remand the case for action on the special exceptions, where appellant has declined to amend, if the allegations are in fact insufficient as against the special exceptions.

■ The first claim alleged is that a named representative of appellee, without the knowledge or consent of appellant, seized and took possession of a strip across certain land owned by appellant, the strip in question containing approximately one acre, of the value of $250. Appellant seeks to recover said $250. Appellant does not seek to try the title to such acre of land, nor does he seek to recover any damages done to it, nor does he seek damages for the loss of its use while in appellee's possession. His suit is an attempt to maintain an action for conversion of the acre

of ground, and to recover its value. "The suit which corresponds to the common law action of trover lies only for the conversion of personal property, and not for a wrongful deprivation of real property." 42 Tex.Jur., p. 513, and cases there cited. See also Cage Bros. v. Whiteman, 139 Tex. 522, 163 S.W.2d 638, recognizing this rule.

The next count is for the wrongful taking of 3,000 yards of dirt, valued at $250, and 500 yards of gravel, valued at $50, from appellant's land. It may be, although we shall not undertake to pass on it, that the allegations are sufficient to state a cause of action on this count. But, for reasons we shall later state, the district court had no jurisdiction of this claim.

The next count in the petition sets forth a claim for $10,000 for damages resulting from fright suffered by appellant. The facts alleged are in substance as follows: Plaintiff owned a tract of land adjoining land owned by appellee. A controversy arose between appellant and appellee's park superintendent over the location of the boundary between the two tracts. Harry Adams, the park superintendent, proposed a meeting on the ground, and on January 16, 1942, took appellant to the land in question in his car. On the day before, Adams had caused survey lines to be run which were not on the true boundary line. When appellant and Adams reached the property, appellant was surprised to see flags already up indicating that Adams had already run the lines, and showing where Adams claimed the line should be. The flags were south of the real line. Appellant protested to Adams, and attempted to show Adams the true corner, but Adams paid no attention to him. Adams said that he had run the lines where the Park Board told him to run them, and that they were going to stay there. Appellant spent some three or four minutes searching for an old marker, and when he turned around he was surprised to see three men rapidly approaching from the west. Adams had not informed appellant that any other persons were to be present, and this fact, together with the fact that there were three of the men, and their rapid gait, and the fact that the three men were approaching appellant and not Adams, filled appellant with great fear of bodily harm. On a prior occasion Adams had framed a charge against one Hay, the manager of the property in question for appellant, and had had Hay arrested and put in jail on a charge of stealing dirt from Park property. Several times Castevens, "Adams' Park Officer," had threatened appellant's customers and made them unload dirt taken from appellant's own property. Adams was enraged with appellant because appellant had remonstrated with the Park Board on account of Adams' acts. Appellant was not aware of any reason why the three men should be present. Adams walked away from appellant in order that he might have an opportunity to signal the three men without appellant's knowledge, and his signal to them indicated to them that they should hasten, and their appearance and their haste were in answer to Adams' signal. Appellant, recalling all of the aforesaid acts of Adams, and the fact that Adams was angry with appellant, and knowing that an ordinary arrest would not appease Adams, and that, even so, it would require only the park officer to make such an arrest, was seized with great apprehension and fear of serious bodily harm and injury. The three men reached appellant at a threatening pace, and their countenances showed grim determination, and were not the countenances of friendly persons, and the three men were all strangers to appellant. Although Adams was only about fifty feet from appellant, and said men were 200 feet, when appellant first saw them, they and Adams reached appellant at the same time. Adams began by introducing John Castevens as "our Park Officer," then he introduced the other two, but appellant does not recall their names, except that one of them was said to be the man who ran the lines. The first words Adams used after the introduction were, pointing to the flag, "Here's where the Park Board told me to run the line, and here's where it's going to be." Appellant protested to Adams that the line was fifty feet over on appellant's property, and, while appellant was talking to Adams, the surveyor spoke in an angry voice and said that he had run the line and knew his business. Appellant turned to look at the surveyor, and Castevens and the third man seemed to spring to attention, and when appellant further discussed the matter, the surveyor grew angrier and one of the other men moved as if he were either going to draw a gun or to strike appellant. From that time on appellant feared to discuss the line further. Appellant and Adams and the three men walked west to the west end of the tract and the Northwest corner, and Adams showed appellant where the

line was there, and appellant said that it was all right because during the whole walk from the east to the west end of the line Castevens and the third man never said a word, and did not take their eyes off appellant; and appeared, as appellant believed, to be watching for some pretext to attack appellant. Adams believed that the taking of appellant's property and the running of the line would greatly aggravate appellant, and would provoke him into some act of seeming aggression, and Adams summoned the three men, in accord with some previous connivance, with the premeditated intention of provoking appellant, and thereby gaining a pretext to seize, beat, manhandle and inflict great injury to appellant. At the time of such occurrences, appellant lacked only four days of being 72 years of age, and was physically unable to cope with one strong and active young man, and was unable mentally to sustain the shock induced by great fear. The three men were all young, strong and active, and well able to overpower appellant, in spite of any resistance that he could offer. The sudden, unwarranted and unexplained show of force and threats by Adams and his three hirelings, together with the preceding arrest of H. J. Hay and the threats to appellant's customers, for the first time in appellant's life filled him with the highest degree of apprehension and fear of great bodily harm and injury, and caused him to suffer great perturbation and uneasiness of mind, outrage and shock to both his physical and mental constitution. Up until the time of his meeting with Adams and his three hirelings, appellant had strong power of concentration of thought, and an unusually active and retentive memory, but as a result of said fear, fright, apprehension of bodily harm and injury, uneasiness of mind, outrage and shock to his physical and mental faculties, suffered at the hands of Adams and his assistants, appellant cannot now concentrate his thoughts upon any subject without the greatest effort, and then only for a short period of time, and appellant's memory has become so fickle and uncertain that he is unable to retain in his mind the daily routine of his work at home and in his office, and is thereby greatly embarrassed and inconvenienced, to his great damage in the sum of $10,000.

■ Appellee's answer contains three special exceptions, the first two of which charge in effect that the allegations of appellant's petition are insufficient to state a cause of action, for numerous reasons set out in the exceptions. The trial court sustained the exceptions, appellant declined to amend, and the cause was dismissed. This being appellant's second amended original petition, and appellant having declined to amend further, we may presume that he has pleaded his cause of action as fully as he was able to plead it, and we need not indulge in favor of it the inferences that might, under our old practice, have been indulged had a general demurrer been sustained to the petition. Stillwell v. City of Fort Worth, 140 Tex. 560, 169 S.W.2d 486.

■ Appellant's typewritten brief of six pages gives us no assistance in determining the questions pertaining to this count in his petition. He briefly states that the show of force and threats of Adams and the three men so terrified and frightened him that it caused him a loss of memory and power of concentration of thought. His brief cites no legal authorities, and contains no argument relating to this count other than the simple statement, to quote it: "Appellant's petition is rather lengthy, but his causes of action are set out clearly and precisely, and are not subject to exceptions Nos. 1, 2, and 3 urged by appellee." This is clearly not the kind of briefing contemplated by our rules of appellate procedure, because, insofar as it has any value to us in deciding the case, it is no brief at all. It has been held in several cases, including one · in which our Supreme Court has refused a writ of error, and others in which a writ has been refused for want of merit, that points of error which are not briefed are waived. San Antonio Joint Stock Land Bank v. Malcher, Tex.Civ.App., 164 S.W. 2d 197, writ refused for want of merit; Wichita Valley Ry. Co. v. Durrett, Tex. Civ.App., 174 S.W.2d 329, writ refused; Piedmont Fire Ins. Co. v. Ladin, Tex.Civ. App., 174 S.W.2d 991, writ refused for want of merit; Broussard v. L. Cartwright Realty Co., Tex.Civ.App., 179 S.W.2d 777, writ refused for want of merit; Doherty v. San Augustine Independent School Dist., Tex.Civ.App., 178 S.W.2d 866, writ refused for want of merit.

If it be our duty to consider that the brief sufficiently complains of the action of trial court with respect to the count

just discussed, it is our opinion that such action must be affirmed.

First, we encounter the question of notice to appellee of the claim of damages for the fright injuries. The charter of the City of Fort Worth, Section 26, Chapter XXVIII, requires, as a condition precedent to bringing suit in the courts, that a claim for personal injuries first be presented to the City Council, in the manner therein set out. Appellee's exception, insofar as it relates to the question of notice, charges that the petition fails to state a cause of action in that "there are no allegations in said paragraphs or in any other part of the plaintiff's petition showing that a notice of claim for damages was ever presented or filed with the City Council as required by Section 26, Chapter XXVIII, of the Charter of the City of Fort Worth, showing that an injury had been inflicted or that damage had been suffered."

The only allegations in the petition which have any reference to notice are contained in paragraph 7 reading as follows:

"And plaintiff shows that the City Council of Fort Worth has fully ratified and confirmed all the said acts of Harry J. Adams and his hirelings, in that after due and legal notification thereof in writing, together with an itemized statement of the property so taken, the date and place of the taking and the amount of damages claimed, said council refused to disavow said acts, refused to make any offer of restitution or reparation, and still retains all of said property."

Appellant filed no pleadings attacking in any way the form or sufficiency of appellee's special exceptions. See Kelly v. Wright, Tex., 188 S.W.2d 983.

■■ In the first place, the allegations of appellant's petition above quoted appear on their face to relate only to appellant's claim for the wrongful taking of his property, and make no reference to his personal injury claim. In the second place, in view of the special exception, the action of the court in sustaining it, and appellant's refusal to amend his petition, we are warranted in holding, and do hold, that appellant does not have sufficient pleading of notice to appellee of his personal injury claim to satisfy the condition precedent set out in appellee's charter provision. Appellant was required, as against the special

exception, to plead affirmatively the giving of such a notice as was required by the charter provision. Cawthorn v. City of Houston, Tex.Com.App., 231 S.W. 701.

As has been said, appellant has cited no authorities nor has he made any argument in his brief in support of the above claim. We have nevertheless considered perhaps all of the decisions of our Texas courts in cases where recovery was sought for fright or injuries resulting from fright, as well as many decisions from other jurisdictions, and such texts as American Jurisprudence, Vol. 52, p. 426 et seq., 25 C.J.S., Damages, § 70, p. 556 et seq., and several annotations in the A.L.R. Series. See annotation in 98 A.L.R. 403, and other annotations there referred to.

■ In Texas it seems to be the rule that there may be no recovery for mere fright, neither attended nor followed by any other injury. Gulf, C. & S. F. Ry. Co. v. Trott, 86 Tex. 412, 25 S.W. 419, 40 Am.St.Rep. 866. But recovery may be had, in a proper case, for physical injuries resulting from fright. Hill v. Kimball, 76 Tex. 210, 13 S.W. 59, 7 L.R.A. 618. The rule is thus declared in Gulf, C. & S. F. Ry. Co. v. Hayter, 93 Tex. 239, 54 S.W. 944, 945, 47 L.R.A. 325, 77 Am.St.Rep. 856:

"We conclude that, where a physical injury results from a fright or other mental shock, caused by the wrongful act or omission of another, the injured party is entitled to recover his damages, provided the act or omission is the proximate cause of the injury, and the injury ought, in the light of all the circumstances, to have been foreseen as a natural and probable consequence thereof. In our opinion, as a general rule, these questions should be left to the determination of the jury."

In all of the Texas cases where recovery was allowed, there was a physical injury resulting from the fright, and the wrongful act of the defendant was of such a nature that a jury might have found that the defendant ought, in the light of all the circumstances, to have foreseen that the injury might result therefrom. In Hill v. Kimball, supra, the defendant assaulted two negroes in the presence of the plaintiff's wife, knowing that the latter was pregnant. The wife suffered a miscarriage and other injuries. In Gulf, C. & S. F. Ry. v. Hayter, supra, the plaintiff was a passenger aboard a train which col-

lided with another train. He was jarred considerably, but did not realize he was hurt until he got off the train. He suffered traumatic neurathenia, which may have resulted from the physical shock, or the mental shock produced by fright, or both. In St. Louis, S. W. Ry. Co. v. Mitchell, 25 Tex.Civ.App. 197, 60 S.W. 891, writ refused, plaintiff's wife suffered a miscarriage resulting from fright. The same type of injury was sustained in Hendrix v. Texas & P. Ry. Co., 40 Tex.Civ. App. 291, 89 S.W. 461; Duncan v. Donnell, Tex.Civ.App., 12 S.W.2d 811; and Levine v. Trammell, Tex.Civ.App., 41 S.W.2d 334, writ refused. In St. Louis Southwestern Ry. Co. of Texas v. Alexander, 106 Tex. 518, 172 S.W. 709, there was evidence that plaintiff's wife suffered a nervous breakdown, that her bodily health was seriously impaired, and that she fell into unconsciousness· at the time she was frightened. In St. Louis Southwestern Ry. Co. v. Murdock, Tex.Civ.App., 54 Tex. Civ.App. 249, 116 S.W. 139, writ denied, there was testimony that plaintiff's wife suffered neurathenia and impaired health as a result of her fright. In Texas Utilities Co. v. Dear, Tex.Civ.App., 64 S.W.2d 807, writ dismissed, plaintiff sustained physical injuries at the time she was frightened. In Laney v. Rush, Tex.Civ. App., 152 S.W.2d 491, it was held that damages were recoverable for fright alone against two defendants who had committed a wilful assault by shooting with guns, but that no recovery for fright alone could be had against a third defendant who was charged only with negligence.

We have found no case where a recovery has been allowed on facts similar or even analogous to those pleaded by appellant. There was no assault. The movements of Adams and the three men, as described in the petition, were abnormal in no way whatever, and were only such as might have been expected of persons meeting with appellant for the purpose of discussing the boundary line between the two tracts of land. According to appellant's petition, most of his fears were produced, not by any threatening words or gestures on the part of Adams and the other three men, but by appellant's recollection of other events. There are no allegations to show that Adams or the other three men had reason to suppose that appellant would suffer any loss of memory or power of concentration of thought, or that he would suffer any fright at all, as a result of the moving about and the language described in the petition. The few words of argument with reference to the correctness of the survey, and the location of the line, were not such as any reasonable person would expect to cause fright or terror on the part of appellant. The allegations, as we interpret them, do not purport to aver that appellant would have been frightened or placed in great fear except for the thoughts formed in his own mind concerning other happenings, such as the arrest of Hay. The petition fails to meet the test laid down in the Hayter case, towit, that the injuries now claimed by appellant ought, in the light of all the circumstances, to have been foreseen as a natural and probable consequence of the acts of Adams and the other three men. Also, it is doubtful if the petition alleges that the other three men were agents or employees of the appellee. They are referred to as "Adams' hirelings." The logical intimations of the petition are that Adams was personally angry toward appellant, and that whatever he may have done with intent to harm appellant sprang from personal motives, and were not acts done in the execution of the duties of his employment. Although there is a vague reference to a physical shock suffered by appellant at the time, we observe that in his brief he characterizes his injuries as loss of memory and power of concentration of thought. It would be inconsistent with appellant's presentation of this case, now and on the former appeals, in both the trial and appellate courts, as attorney for himself, to interpret his allegations to mean that he has suffered complete loss of his mental faculties. We have found cases allowing recovery for insanity, and for nervous breakdowns, but not for the type of injury described here.

As has been said, the pleading under attack is appellant's second amended petition. He had also pleaded his cause of action by way of cross-action in the tax suit. It has been under attack by appellee for a considerable length of time, in one way or another. Appellant has declined to amend. We may therefore presume that he has pleaded as fully as he was able to do so. We think the trial court acted properly in sustaining the exceptions to the count just discussed.

The last count pertains to certain water and sewer lines laid across land owned by

appellant. In 1923 the land was owned by L. J. Hawkins. He executed and delivered a deed of trust covering said land to secure an indebtedness to appellant. It is alleged that appellee, after appellant acquired his lien, made some kind of agreement with Hawkins for the laying of water and sewer lines across the land. Appellant is unable to allege whether the agreement with Hawkins was in writing or oral, or the terms of it, other than to say that the substance of the agreement was that a certain sum, either agreed upon or to be agreed upon by the parties, was to be allowed Hawkins for the use of the right of way, but that it should not become due and payable until such time as appellee should demand its taxes against the land, and that at such time the amount to be paid to Hawkins was to be determined and converted into cash and credited on Hawkins' debt for taxes on the property. It is alleged that appellee has been using the water and sewer mains for eighteen years, without having paid anything therefor, and that the reasonable value of the use of the right of way is $300 per year, amounting, with interest to time of filing the petition, to the total sum of $8,316. Appellant foreclosed his lien on the land in 1936. He does not allege an assignment to him of any sum the appellee might owe Hawkins, but says that he is entitled to a marshalling of assets, to the end that appellee will apply the $8,316 to the payment of judgments in the two tax suits against appellant, aggregating $7,466.27, and that appellant have judgment against appellee for the remainder.

■ Appellant cites no authority in support of the claim just described. The argument in his brief is to the effect that appellant became subrogated to Hawkins' rights under whatever agreement the latter had with appellee concerning the right of way. We are not able to fashion any theory of recovery out of the facts alleged. It seems obvious that no one on behalf of the City of Fort Worth could make a valid agreement to waive taxes in consideration of the right of way across the property, or to put it another way, to make a valid agreement to apply the reasonable value, or agreed value, of the right of way to the payment of taxes. Taxes have to be paid in money, in the absence of statutory authority to make payment otherwise. 40 Tex.Jur., p. 176. "Except in pursuance of some statute expressly allowing the taxpayer to set off a debt to him by the tax authority, no such set-off is allowed." 40 Tex.Jur., p. 177. Appellant does not sue as the assignee of Hawkins' claim for payment for the right of way, nor does he sue for a tortious invasion of the property. Nor will his allegations support a judgment for wrongful depreciation of the security for his mortgage debt.

■ It is seen that the allegations of the petition are insufficient to state a cause of action for any of the claims asserted, with the possible exception of the claim for conversion of dirt valued at $250.00 and gravel valued at $50. We thus find applicable the rule followed in Western Union Tel. Co. v. Arnold, 97 Tex. 365, 79 S.W. 8; Id., 33 Tex.Civ.App. 306, 77 S.W. 249; St. Louis Southwestern R. Co. v. Hill & Morris, 97 Tex. 506, 80 S.W. 368, and many cases since, to the effect that, where some of the counts have been eliminated from the suit by special exception, and where the remaining count involves an amount below the jurisdiction of the court, and the plaintiff declines to amend, the suit should be dismissed.

Appellee's special exceptions were sufficient to raise the questions above discussed.

The suit, as to all counts except that relating to the conversion of the dirt valued at $250 and the gravel valued at $50, appellant having declined to amend, was properly dismissed, with prejudice. The suit for the conversion of the dirt and gravel, being below the jurisdiction of the court, should have been dismissed without prejudice to appellant's right to file suit therefor in a court of competent jurisdiction. We reform the judgment accordingly. As reformed, it is affirmed.