**James MILLER et al., Appellants,**

**v.**

**Glen MAPLES, Appellee.**

**No. 6419.**

Court of Civil Appeals of Texas.

Amarillo.

June 21, 1954.

Rehearing Denied Sept. 7, 1954.

Chas. H. Dean, Plainview, for appellants

Dennis Zimmerman, Tulia, for appellee

MARTIN, Justice.

Appellee, Glen Maples, plaintiff in the trial court, sued appellants, James Miller and Marlin Miller, for damages caused by the death of turkeys owned by the plaintiff. It is appellee's contention that appellants' airplane, while being used in aerial spraying on an adjoining farm, frightened the turkeys belonging to appellee causing them to run into troughs and other obstacles in the pens and thereby causing their death.

The jury found in answer to Special Issue No. 1 submitted to them that appellant, Marlan Miller, while spraying crops on the lands of Bill Woods, flew over the land of the appellee. The jury found in answer to Issue No. 2 that the act of Marlin Miller in flying over the appellee's land was negligence. Under Special Issue No. 3, the jury found that such negligence was the proximate cause of the death of and damages to the turkeys of the appellee and in answer to Special Issue No. 4 fixed the damages at $524.96. On this verdict, the trial court rendered judgment for appellee and appellants have perfected an appeal presenting fourteen points of error.

Appellants' points of error will not be treated in detail as such points of error are based on the proposition that the trial court erred in submitting Special Issue No. 3 and No. 4 to the jury and in refusing to instruct a verdict for the defendants. The appeal is principally based on the proposition that there was no proof of proximate cause in that the fright of the turkeys and consequent damage was not a foreseeable result arising from the flight of appellants' airplane over appellee's land while such airplane was being used in aerial spraying. Appellants further contend that the damages are uncertain, contingent, and speculative. Appellants also assert that no damage could be predicated on the facts in the cause as appellee's damage was proximately caused solely by fright of the turkeys.

■ Appellants' Points 8, 9, 10, 11, and 12 may be disposed of on an issue of law as applied to the facts. These points of error are based on appellants' objections to testimony of a veterinarian who testified as to the effect of fright on turkeys and appellants submit here the proposition that damages may not be predicated upon mere fright even though caused by negligence of the appellants. This proposition is not within the scope of appellants' objection to such testimony as made in the trial court and the trial court was not placed on notice as to this proposition as a basis of appellants' objections. However, the law and facts on this issue do not support appel-

lants' points. The record reveals that physical injury resulted to the appellee's turkeys by reason of being frightened by appellants' airplane while it was being used in the aerial spraying. The Supreme Court of Texas in Houston Electric Co. v. Dorsett, 145 Tex. 95, 194 S.W.2d 546, 548, ruled as follows on this issue:

" 'We conclude that, where a physical injury results from a fright or other mental shock, caused by the wrongful act or omission of another, the injured party is entitled to recover his damages, provided the act or omission is the proximate cause of the injury, and the injury ought, in the light of all the circumstances, to have been foreseen as a natural and probable consequence thereof. In our opinion, as a general rule, these questions should be left to the determination of the jury.' "

Although the decisions on this issue are ones dealing with claims for personal injury, the same principle of law is applicable to the issue here. Appellants' Points 8, 9, 10, 11, and 12 are accordingly overruled. Laney v. Rush, Tex.Civ.App., 152 S.W.2d 491; Levine v. Trammell, Tex.Civ.App., 41 S.W.2d 334; St. Louis Southwestern Ry. Co. of Texas v. Murdock, 54 Tex.Civ.App. 249, 116 S.W. 139, second case; St. Louis Southwestern Ry. Co. of Texas v. Alexander, Tex.Civ.App., 141 S.W. 135.

The above ruling of the Supreme Court, when applied to the facts in this cause, also requires that appellants' Points 1, 2, 3, 4, 5, 6, 7, 13, and 14 be likewise overruled. Such points are concerned with fact issues in the cause as to negligence, proximate cause, and damages. Appellants rely principally on the testimony of Reese Cobb, Wayne Painter, and W. A. Painter to establish a fact issue that appellee's turkeys could not have been frightened by the appellants' airplane flying over their pen. Coupled with this issue is appellants' further contenton that the appellants in operating the airplane could not have foreseen the resulting fright to the turkeys and their

ensuing death. The fact situations introduced by appellants through their witnesses are not wholly applicable to this cause of action in that appellants revealed by the testimony of Reese Cobb that he had raised turkeys adjacent to Bergstrom Aviation Camp in Austin and that army planes flew over his farm daily training pilots in hedge-hopping. It must be observed that even in the light of conditions of continual flight that Cobb testified as to the effect of such flights on turkeys that "sometimes they would squat right where they were, similar to quail." This evidences fright on the part of the turkeys even where there was habitual flying.

■ ▉ The evidence of appellants' witnesses, Wayne Painter and W. A. Painter, reveals that Wayne Painter kept an airplane hangared on his father's farm for one year and that he was flying from the farm for a period of years and frequently came out and buzzed the house. Wayne Painter testified that the turkeys "wouldn't fly any worse from an airplane than they did from a hawk." He also testified in answer to whether an airplane would scare the turkeys that turkeys would fly from an airplane just like they would from a large bird. The conditions testified to by the Painters revealed only circumstances where an airplane was being flown on and off the farm habitually. Wayne Painter also established the element of foreseeability and proximate cause by his testimony that a man could see that the turkeys were flying from the airplane just like they would from a large bird if he would look back. He further testified that in spraying you have to fly close to the ground and that when you get to the end of a row in spraying you would pull up and that you had to put on more power to do that—"You have to shoot the gun to it to do that." Appellants' own witnesses established that even under habitual flying conditions turkeys would become frightened and that their action on the ground could be observed from the airplane overhead. On these issues the jury's verdict is established by a preponderance of the evidence as appellants' own witnesses

established that the turkey pens of the appellee, covering some three to five acres, with three turkey pens therein and 1889 turkeys in the area, could have been seen by the appellant flying low over the same and that he could have observed any fright of the turkeys and could have foreseen that the turkeys would run into the troughs and fences and would thereby bruise and injure themselves causing their death.

One element not discussed by the parties to the appeal has been examined in the light of appellants' request for an instructed verdict as the cause is based on circumstantial evidence. The evidence given by Mr. and Mrs. Glen Maples established that the turkeys had never been frightened by an occasional, over-flying airplane until appellants' airplane was flown near the pens and that following such flights the turkeys were frightened at the approach of any airplane, became "hysterical" and would run into the fences and troughs and would pile up and had to be taken care of to prevent their injury. Appellees had gone to town in the morning prior to the spraying and their evidence establishes that some of the turkeys were dead when appellees returned from town in the afternoon of the same day that appellants sprayed the crop in an adjoining field near the turkey pens. On returning from town, appellees examined the turkeys and found them bruised and lacerated and could find nothing the matter with them other than their bruised and torn condition which appellees ascribed to the turkeys running into the pens and troughs when frightened by appellants' low-flying airplane. In conjunction with the above evidence, the record has been examined as to the condition of the turkeys prior to the spraying incident. The record reveals that the turkeys were in good condition prior to the spraying and were not suffering from any disease or illness on the morning when appellees left the farm and went to town—the morning of the aerial spraying. Mrs. Maples testified as to the turkeys, "We bought 1875 and we had 149 when we went to ranching and we hadn't lost any. I think we had 14 more than we originally paid for

and we hadn't lost any in the brooder house." ...

There were no objections to the court's charge nor requests for any issue other than those submitted by the court. Without detailing further the evidence in the cause, it is ruled that the record supports the jury's answers to the issues in the cause and the trial court correctly entered judgment for appellees on such issues as against appellants for negligently causing the death of appellee's turkeys. Attention is again called to the ruling of the Supreme Court in Houston Electric Co. v. Dorsett, supra, as pertaining to the issues here in controversy: " 'In our opinion, as a general rule, these questions should be left to the determination of the jury.' "

Appellants' fourteen points of error are overruled and the judgment of the trial court is affirmed.