## EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES v. MURDOCK.

### No. 4599.

Court of Civil Appeals of Texas. El Paso.
Feb. 2, 1949.

Rehearing Denied Feb. 23, 1949.

160

Locke, Locke & Purnell and John D. Harris, all of Dallas, for appellant.

White & Yarborough, of Dallas, for appellee.

SUTTON, Justice.

This is an appeal from a judgment of the 14th District Court of Dallas County. The trial was to a jury on the facts. The verdict was favorable to Murdock, the plaintiff below, and from the judgment entered by the Court the defendant prosecutes this appeal.

The plaintiff sued for and recovered $3,000.00 as the maximum benefits under a certificate issued to him under a grouped life and disability policy issued to the Morton Salt Company, his employer, for permanent disabilities claimed to have been incurred while employed by the Morton Salt Company.

This was a second trial of the case in the trial court. On a first trial the verdict was for the defendant and judgment accordingly. The verdict and judgment were set aside on a motion for a new trial and this appeal is from the judgment rendered on the second trial of the case.

The defendant has seven points of error. The second and third points are grouped, as are the fourth and fifth. The first point in various ways challenges the judgment on the ground plaintiff wholly failed to furnish "due proof" of his permanent disability as required by the policy; the second that the court erred in refusing to admit in evidence the assignment of plaintiff to his attorneys of a one-half interest in his recovery, because it is asserted the assignment was material to the issue of due proof and waiver and the issue of whether or not plaintiff was totally and permanently disabled; the third that the court erred in excluding evidence and reference to an intervention filed by the attorneys for the reason assigned with respect to number two. The fourth point complains that the trial court erred in admitting in evidence denials of liability contained in the original and first amended answers as indicating a waiver of due proof; the fifth, that having admitted parts of the answers, the court erred in refusing to admit the remaining portions of the answers to show by fair intendment there was no waiver.

The sixth point is the court erred in denying defendant's motion for a recess or adjournment in order that a physical examination might be had of the plaintiff, and the seventh is the court erred on the first trial in vacating the judgment in favor of the defendant and granting a new trial.

As a result of some bickering in this case the record is larger than it might have been otherwise, and the points have been multiplied. The transcript consists of 145 pages and there are two statements of fact totaling more than 450 pages.

The plaintiff counters the first point and seeks to sustain the judgment against the attack there made on the grounds first, that due proof was made as required by the contract, and secondly, because any further proof other than as made was waived.

The policy provided:

" 'In the event that any Employee while insured under the aforesaid policy and before attaining age sixty, becomes totally and permanently disabled by bodily injury or disease and will thereby presumably be continuously prevented for life from engaging in any occupation or performing any work for compensation of financial value, upon receipt of due proof of such disability before the expiration of one year from the date of its commencement, the Society will, in termination of all insurance of such Employee under the policy, pay equal monthly disability installments'— amounting in the instance of the plaintiff, to sixty monthly installments of $54.00 each."

Plaintiff sustained his claimed disability on February 19, 1943. On May 29, 1943, White & Yarborough, attorneys for plaintiff wrote the defendant as follows:

"Gentlemen:

"Your are hereby notified that we have been employed by Richard T. Murdock to represent him in a claim and cause of action which he has and holds against you by reason of the above described certificates, issued under a group policy of insurance sold by you to Morton Salt Company. Richard T. Murdock is claiming total and permanent disability, and you are hereby given notice of same. Richard T Murdock does hereby make demand upon you for payment of the disability benefits as provided under the certificates issued to him. Unless we hear from you in the near future in regard to same we will presume that you are denying his claim.

"You will hereby take notice that Richard T. Murdock has assigned us an interest in the claim and cause of action which he has and holds against you by reason of the above numbered Certificates.

"Yours very truly,"

On June 14, 1943, the defendant replied as follows:

"Gentlemen:

Richard T. Murdock
Certificate 3379–4583
Morton Salt Company—Group.

"Please excuse the delay that has occurred in acknowledging your letter of May 29, 1943.

"In accordance with the Society's customary practice, we are obliged to request that you kindly furnish us with a state-

ment over the signature of Mr. Murdock to the effect that you have been retained by him to represent him in the matter of claim for total and permanent disability benefits under the above numbered Certificate.

"While awaiting this requirement, we are contacting the Morton Salt Company for full details in the matter.

"Yours very truly."

On June 30, 1943, plaintiff filed this suit to recover the benefits claimed by him to be due, wherein he claimed a total and permanent disability. July 23, 1943, the defendant filed its original answer, consisting of numerous special exceptions and a general denial. On September 7, 1943, the defendant filed its plea in abatement wherein it set up the lack of due proof claimed by it and prayed that plaintiff be required to furnish the proof and that the suit be abated until it was furnished. On the same date it filed its amended answers, setting up a number of special exceptions, a general denial and various special denials, amongst which were special denials of any total and permanent disability at any time and that it was liable to plaintiff under any provision of the policy and certificate.

On March 8, 1943, plaintiff filed a claim under the accident and health policy for a total disability commencing on February 20, 1943. His trouble was described as a sinus infection and bronchitis by the attending physician, Dr. H. B. Stilwell, an Osteopath. On continuance certificates executed by Dr. Stilwell and the Manager of Morton Salt Company, payments were made by the defendant from February 20, 1943, until May 18, 1943. On July 6, 1943, plaintiff filed another claim under the health and accident policy for sick benefits accompanied by a statement of Dr. W. J. Hazel, a physician some 77 or 78 years of age. His diagnosis was Malaria. Continuance payments were made to September 18, 1943. Dr. Hazel testified October 25, 1946, he had treated plaintiff four or five years prior thereto for pneumonia following which he had endocarditis and the doctor advised him he could not go back to work any more.

Plaintiff worked on a drag line in the salt mine prior to his illness and disabilities. He returned to the plant in September 1943, and worked for a few days in the evaporating plant where there was no dust. His job there was to take the round blue cans of Morton's salt off the table. That proved too hard and he was given a night watchman's job which he held until April 15, 1945, when he left the employ of the Morton Salt Company.

The jury found plaintiff has sustained a total and permanent disability and the defendant in its brief says, "the jury verdict on the issue is not challenged by defendant on this appeal and is not an issue on the appeal." Aside from the point assailing the action of the court in granting the new trial, the defendant seeks only to avoid its liability here on the ground plaintiff did not furnish due proof of his total and permanent disability as provided by the policy. Defendant properly says the due proof provision serves a proper purpose in that "it enables the insurer to protect itself from fraudulent or unfounded claims which cannot be supported by proofs making out at least a prima facie case of liability. It enables the insurer to know, while the facts are still fresh enough to make investigation worthwhile, what support exists or is claimed to exist for the claim." This is a reiteration of the purpose enumerated in 24 T.J. § 278 at page 1088. There is no claim whatsoever made by the defendant that it was denied any right or privilege or that it was in anywise prejudiced by the claimed failure of the plaintiff to furnish due proof of his disability. As has already been noticed, defendant had been furnished on its own forms information with respect to plaintiff's total disability which it doubtless regarded as sufficient proof thereof because it made numerous payments due under the accident and health policy. These consisted of statements by the plaintiff that he had suffered a total disability; a statement by a physician of the cause and a statement by the plant Manager, giving the date he ceased to work and that he had not returned to work. They each answered specific questions embodied in the forms. One of these preceded the letter of May 29, 1943, and the other came after.

As in the case of Aetna Life Insurance Company v. Tipps, Tex.Civ.App., 121 S.W.

2d 324 and the Callahan case, American National Ins. Co. v. Callahan, 125 Tex. 222, 81 S.W.2d 504, there cited, what shall be considered due proof is not specified in the policy. The requirement is wholly general. There is no requirement as to form or as to fact or facts to be supplied. Defendant already had information it accepted as satisfactory of a total disability. The effect of the letter of May 29, 1943, was to advise the defendant plaintiff was claiming a permanent disability, and it was advised "Unless we hear from you in the near future in regard to same we will presume that you are denying his claim." The only reply made has heretofore been copied. We regard the letter, together with the information previously supplied over the signature of plaintiff, the physician and employer Manager a sufficient compliance with the requirement of the policy provision.

If the information previously received be disregarded, under the remaining record there was unquestionably a waiver. The letter of May 29, 1943, invited negotiation and squarely put the defendant upon notice that its failure to respond to the claim and demand for a total and permanent disability would be treated as a denial of the claim. The response was a demand for a showing of authority on the part of the attorneys to act for the plaintiff and an assertion it would in the meantime contact the Morton Sale Company for full details in the matter. Plaintiff had a right to assume the statement was made in good faith; that the investigation was made and the full details of the matter obtained, and that the failure to respond was to be taken as a denial. There is an abundance of evidence in the record the facts were inquired into further. With the information already in hand and the claim and demand made in the May 29 letter, if the defendant were dissatisfied with the proof and regarded it insufficient, it was under the duty to point out the defects and omissions, and a failure to do so constituted a waiver of further proof. The language used and quoted from the authorities in Francis v. International Travelers' Ass'n, Tex.Civ. App., 260 S.W. 938, at page 946, par. (9) is peculiarly applicable and was given the express approval of the Supreme Court in the same case, 119 Tex. 1, 23 S.W.2d 282, last paragraph page 287.

A case in which the judgment has been approved and the application dismissed for want of merit must be cited with some reservations, but we regard the holding on waiver in Connecticut General Life Insurance Company v. Turner, Tex.Civ.App., 123 S.W.2d 997 in point here, and all that was said about the position of the Insurance Company applicable in the instant case. The Supreme Court could not approve the judgment, it is thought, without approving the holding made on the point.

■ Plaintiff's attorneys had a contract and assignment for one-half of any recovery that might be had. Apparently on the belief plaintiff and defendant had made a settlement of the case after defendant had knowledge of the assignment the attorneys intervened in the case and sought to recover one-half of the amount claimed to be due under the policy. The intervention was dismissed on November 6, 1946, more than a year prior to the trial of the case on December 2, 1947. Defendant does not point out in what manner either the assignment or intervention is material or relevant to any issue tried and submitted to the jury in the case and we are unable to discover any and the second and third points are accordingly overruled.

■ We think the fourth and fifth points cannot be sustained, because if good the errors complained of became immaterial and harmless. The issue of waiver was not determined by the jury. Special Issue Number three inquired of the jury if the defendant received due proof of the total and permanent disability within the year. To this they replied "Yes". They were then told if they answered No. 3 in the affirmative they need not answer Number Four, which was—did the defendant waive due proof. The jury accordingly made no answer to the issue on waiver. The admission of the general denials contained in the original and first amended answers could have had no harmful effect nor influenced the jury to the prejudice of the defendant, because the same matters were pleaded in the fifth amended answer upon which

the defendant went to trial and were read to the jury.

The denials introduced could not constitute any proof of waiver, because it is held "when a general denial is interposed by the defendant no statements in the answer can be used as evidence to establish the allegations of plaintiff's petition." Hynes v. Packard, 92 Tex. 44, 45 S.W. 562, at page 564, and cases there cited.

Of course, the special exceptions contained in the answers offered by the defendant proved nothing and were not admissible. They were addressed to the Court, nor was the whole of the answer admissible for all the reasons stated above.

■ There was no error in the refusal of the trial court to take a recess to give the defendant an opportunity or to take a chance on a physical examination of the plaintiff at 10 A.M. on the last day of the trial after the conclusion of the testimony, nor in the midst of testimony in the late afternoon before, because the plaintiff was under no obligation to submit to the examination and the defendant was not entitled to the examination as a matter of right. Austin & N. W. R. Co. v. Cluck, 97 Tex. 172, 77 S.W. 403, 64 L.R.A. 494, 104 Am. St.Rep. 363, 1 Ann.Cas. 261; I & G. N. Ry. Co. v. Gready, 36 Tex.Civ.App. 536, 82 S. W. 1061; Safeway Stores v. Rutherford, Tex.Civ.App., 101 S.W.2d 1055, 1056; Kirkpatrick v. Neal, Tex.Civ.App., 153 S. W.2d 519.

We hardly think the record discloses an unconditional willingness on the part of plaintiff to submit to a physical examination. It would serve no purpose to set out the questions and answers here. The record is such as to fully justify the refusal of the court to take the recess to try out the experiment.

■■ Under the seventh point we are asked to review the action of the trial court in granting a new trial after the first trial. The defendant in its brief concedes the matter of granting and refusing new trials is a matter within the discretion of the trial court and that no appeal lies from the order made granting the new trial, but it insists this court has the power now to consider the claimed error and to reverse the judgment rendered on the second trial and direct the reinstatement of the judgment first entered at the first trial. This we think may not be done. To do so would be to do indirectly what cannot be done directly. The concession disposes of the point. The right of appeal, the right to have reviewed and revised a judgment or order of a court, is a privilege only and does not exist as a matter of right but only when authorized by the Constitution or statutes. This right was once conferred, Acts 39th Leg. ch. 18, 1925, p. 45, but was revoked, Acts 40th Leg.1927, p. 75, now Art. 2249, Vernon's Statutes.

■ The power to grant new trials is inherent in the Court, and that power will not be abridged even by statute unless the intention to do so be apparent. Nevitt v. Wilson, 116 Tex. 29, 285 S.W. 1079, at p. 1083 (10–15), 48 A.L.R. 355.

New trials may be granted in the interests of justice and not for errors of law only. Hagerty's Ex'rs v. Scott, 10 Tex. 525, 526, 46 C.J. 416, Sec. 472.

It is said to be the general rule, unless the case comes within some special statutory provisions, neither an appeal, writ of error, nor exceptions will lie from an order granting or refusing a new trial, because addressed to the discretion of the trial court, or because not a final judgment or both. 4 C.J.S., Appeal and Error, § 123, p. 244.

The greater latitude is allowed the trial court in granting than in refusing new trials, since in such cases the rights of the parties are not finally settled. There are many apparent reasons why the trial court is permitted to exercise so liberally this inherent power and discretion. The trial court having the parties, the witnesses and counsel before it, and the opportunity to observe their demeanor and conduct during the trial and to note all incidents occurring during its progress likely to affect the results of the trial, is better qualified to judge whether a fair trial has been had and substantial justice done than is the appellate court, it is said. Many of the considerations incident to a discussion of the question are interestingly set out by the eminent Judge in Sweeney v. Jarvis, 6 Tex.

36, cited by the defendant. The many reasons that might be assigned and that are to be found in the text books and authorities may well be the explanation for the failure of the Legislature to extend the right of appeal for so long a time, and why it so soon took it away after it was given. In the opinion of this writer it is this inherent power and the discretion well placed that makes a District Judge the most important officer in the State Government and a good one the most valuable, because armed with this power and discretion, if justice miscarries it is generally his fault.

Since there is no reversible error demonstrated, the judgment of the trial court is affirmed.

McGILL, Justice (concurring).

■ In my opinion the policy provision as to proof of loss was not complied with. All the written proof which appellee furnished appellant, other than the letter of May 29, 1943, written by his attorneys, was for the purpose of showing total disability under policy No. 3380. Under such proof he did not claim permanent disability, he furnished no proof showing permanent disability prior to the filing of this suit on June 30, 1943. All the written proof he furnished thereafter during the year from the date he claimed his total and permanent disability commenced showed total disability, but utterly failed to show its duration. It was unnecessary for him to do so in order to recover under policy No. 3380. The letter of May 29, 1943, written by his attorneys, amounts to no more than a claim of loss. It is the mere assertion of a claim under the policy, and is no proof of the validity of such claim.

■ I concur in the affirmance of the judgment for the reason that under the evidence the defendant waived proof of loss. The proof furnished under Policy No. 3380 may afford a reason for the waiver of proof on the policy sued on and appellant's letter of June 14, 1943, in which it advises appellees attorneys that "while waiting this requirement we are contacting Morton Salt Company for full details in the matter" evidences such waiver and the trial court found in the judgment that there was such waiver.

I am authorized to state that Chief Justice Price concurs in these views.