WRIGHT v. E–Z FINANCE CO. et al.

No. 14737.

Court of Civil Appeals of Texas.

Dallas.

March 26, 1954.

Motion to Dismiss Overruled Feb. 12, 1954.

Rehearing Denied April 30, 1954.

Edward C. Fritz, Dallas, for appellant.

Mays & Lea, H. B. Houston, Alto B. Cervin, W. S. Barron, Jr., Ed C. Stearns and R. D. Hardy, Dallas, Coleman Gay, Austin, amicus curiae, for appellees.

CRAMER, Justice.

This action was filed by E. Roy Wright against W. Lee Moore, Jr., individually and as administrator of the Estate of W. Lee Moore, Sr., deceased, as partners; and under Rule 28, Vernon's Texas Rules of Civil Procedure, against General Finance Co., E-Z Finance Co., Texas State Finance Co., and Acme Company Loans, being unincorporated companies or partnerships operated by the Moores; and against Citizens Service Co., unincorporated, owned by Paul Luther, and Reserve Loan Co., unincorporated, owned by Mrs. A. B. Luther, against each of the Luthers, individually, and against V. L Ware who operates a small loan business in his own name.

The pleading shows no direct connection between the Moores and the Luthers or the Companies they each operated other than that it is alleged that they conspired to charge Wright usurious interest on loans made to him and that all, except Ware, were in a conspiracy to injure Wright by the use of harsh and persistent collection methods. The pleadings assert two causes of action,—one a statutory action for penalties for usurious interest collected from Wright; the other for damages actual and exemplary for mental anguish and conse-

quent physical suffering therefrom, intentionally, wantonly, and maliciously inflicted on Wright and his wife by the persistent and harassing communications by each and all appellees (except Ware) in their efforts to collect. Ware was sued only for usurious penalties.

The trial court overruled the motions of various parties to sever, and the case proceeded to trial as to all parties and after hearing all evidence the trial court directed a verdict in favor of Bankers Health & Accident Company, overruled other motions and submitted the cause to the jury on some 251 special issues which will not be summarized herein except those necessary to pass on the questions raised on this appeal. Moore individually and in his representative capacity for the companies operated by him and his deceased father made a motion for judgment on the verdict, and subject thereto moved the court to disregard the findings of the jury and enter judgment for each of them. Such motions were overruled, exceptions reserved, and the trial court, after a suggested remittitur was declined, rendered judgment on the verdict as follows: Against Ware for $403.67; against the Luthers and Reserve Loan Service for $1,358.12; against the Luthers and Citizens Service Co. for $1,366.90; against General Finance Loans and W. Lee Moore, Jr., individually and as independent executor, etc., jointly for $1,150; against General Finance Loans, Moore, Jr., and the Moore, Sr., Estate for $1,150 plus $57 on a second count in the pleading; against E-Z Finance Co. and Moore, Jr. and his father's estate for $1,150 plus $19 on a second count; against Acme Company Loans, Moore, Jr. and his father's estate for $1,150; against Texas State Finance Co., Moore, Jr., and his father's estate for $1,150; and denied Ware a recovery on his cross-action.

On motion for new trial this judgment was, by Judge Peurifoy who succeeded Judge Dixon the trial judge, set aside and a new judgment was entered awarding Wright a total of $403.67 against Ware and a total of $197.40 against the Luthers d/b/a Reserve Loan Service; a total of $120 against the Luthers d/b/a Citizens Service Co.; a total of $57 against General Finance Loans, Moore, Jr., and his father's estate; a total of $19 against E-Z Finance Co., Moore, Jr., and his father's estate; denied all other relief to all parties; and taxed the costs 1/3 to Wright and 2/3 to defendants. Motion for new trial having been overruled, Wright duly perfected this appeal [1].

Appellant Wright briefs five points of error, in substance: (1) In striking from the judgment damages for mental and physical suffering; (2) error in failing to render judgment for exemplary damages awarded by the jury; (3) error in failing to at least render judgment for the exemplary damages not ordered to be remitted; (4) error in failing to render judgment against appellees General Finance Loans, E-Z Finance Company and W. Lee Moore, Jr., for double damage for usury instead of single damages; and (5) error in charging 1/2 of the costs to Wright.

The Luthers' three counter-points are in substance: (1–2) Error in not dismissing this cause for the reason that (1) Wright's petition on its face shows a misjoinder of parties and causes of action, and (2) the only causes, if any, alleged are unrelated acts for statutory usury penalties in amounts below the district court's jurisdiction; (3) error in rendering judgment for usury in any amount because the evidence shows that in each transaction appellees were acting only as appellant's agent in procuring a loan from another party not joined in this suit.

Points 1, 2, and 3 will be considered together. They involve questions of Wright's right to recover actual and exemplary damages and the right of the trial court to reduce the amount of the verdict over his (Wright's) protest and refusal to remit. Wright contends that the right to actual

1. Ware perfected a separate appeal and filed his record here as a separate cause. The Moores and Luthers have filed separate reply briefs and the Luthers have in their brief filed three cross points.

and exemplary damages exists and the trial court must enter judgment thereon absent remittitur. Appellees who made the loans in question of course each in counter-points take the contrary view.

The jury by its verdict found damages separately as against each of the appellees in the following amounts for mental and emotional pain and suffering in the past and in the future $700; for Wright's physical illness in the future $50; for Mrs. Wright's loss of time from work $40; for Wright's mental and emotional pain and suffering $350; for Mrs. Wright's physical illness $10; exemplary damages to Wright $3,000; exemplary damages to Mrs. Wright $2,000: or a total of $6,150 against each of the trade-name defendants and their owners, totaling as to the six defendants, $36,900.

■ The right to damages exists only when the facts necessary to sustain them exist and are shown by the evidence in the record. Appellees rely on the opinion of our Supreme Court in Harned v. E-Z Finance Co., 254 S.W.2d 81. The court there held that the Harned action was "for mental suffering; there can be no recovery for mental suffering where there is no physical injury, no injury to property, no other element of actual damage, and no independent tort. (2) The Courts which allow recovery in similar cases have cre-ated a new tort. (3) Texas cases do not support the action. (4) The collection or attempted collection of usurious interest is neither a crime nor a tort. (5) Public policy is against opening the door to such claims; mental suffering is too hard to establish; fictitious and trivial litigation would follow. (6) The common law gives no remedy, and if one is to be provided it must be done by the Legislature." Quota-tion is from 31 Texas Law Review, p. 473.

■ Appellant here asserts that our present case has two distinguishing features which make the Harned case inapplicable here. Here there were physical as well as mental results from the acts of appellee Loan Company. Too, the rule in Texas, taken from the common law, is that where

personal injury as well as mental suffering results a recovery may be had for exempla-ry damages. In other words, exemplary damages may not only be the basis of a re-covery for mental suffering as a result of and following physical injury, but also where the mental condition thereafter or as a part thereof results in physical mani-festations and injury.

In Hill v. Kimball, 76 Tex. 210, 13 S.W. 59, 7 L.R.A. 618, our Supreme Court speak-ing through Chief Justice Gaines on this point stated:

"After a very careful consideration of the petition, we are of the opinion that its allegations show a cause of action. We have found no exact precedent for such an action, but that is no sufficient reason why an action should not be sustained. That a physical personal injury may be produced through a strong emotion of the mind there can be no doubt. The fact that it is more difficult to produce such an injury through the operation of the mind than by direct physical means affords no sufficient ground for refusing compensation, in an action at law, when the injury is intentionally or negligently inflicted. It may be more diffi-cult to prove the connection between the alleged cause and the injury, but if it can be proved, and the injury be the proximate result of the cause, we cannot say that a recovery should not be had."

The Hill v. Kimball case, as shown by Shepard's Texas Citations, is followed or distinguished in innumerable cases, but it has never been questioned or overruled. Noteworthy here is an article on that case in 12 Texas Law Review, page 1. The evidence here raises the issue of physical injury resulting after and from mental excitement caused by the acts of the several agents and owners of the companies in-volved here. In our opinion, therefore, Harned v. E-Z Finance Co., supra, relied on by appellees, is clearly distinguishable from this case, in that here there was phys-ical injury as a direct result of the mental condition brought about by appellees' acts; and the trial court in the last judgment erred in ignoring the exemplary damage

issue, absent a remittitur by appellant. The judgment should have been for the full amount of the verdict on exemplary damages or set aside and a new trial granted.

Notwithstanding above holding, however, we are of the opinion that the trial court in rendering judgment for the balance which should have remained after remittitur, if such remittitur had been acceptable to appellant, discloses that the trial court was of the opinion that a remittitur was in order.

We have examined the record here with reference to such matters and are of the opinion that the amount of the verdict is excessive in the sum of $4,500 of each of the $5,000 exemplary damage awards However this may be cured by remittitur. Points 1, 2, and 3 are overruled conditionally.

Appellant's points 4 and 5 complain of the trial court's refusal to allow double damages under Art. 5073, Vernon's Ann. Civ.St., for usury found to have been charged by certain of the trade name defendants and the parties therein. Double damages for usury charged are in the nature of penalties. Texas Const. Art. 16, sec. 11, Vernon's Ann.St.

In Texas penalties do not survive the death of either the party liable therefor or the party entitled thereto. 32 Tex.Jur. 767, Penalties, sec. 16, and cases there cited.

In the cause now before us the parties against whom the penalties are alleged to have been chargeable were trade name partnerships all owned and controlled by defendant W. Lee Moore, Jr., and W. Lee Moore, Sr., now deceased.

It is without dispute that the penalties here are claimed by the party to whom they are due under Art. 5073, Vernon's Ann.Civ. St., to wit, appellant Wright, and are by him claimed against the partnerships and W. Lee Moore, Jr., as a partner and W. Lee Moore, Sr., deceased, estate, as a partner.

It is well settled that the debts of a partnership are joint as to all members of the partnership, and also severable as to each of them. 32 Tex.Jur. 356, Partnerships, sec. 87.

The liability of a surviving partner for the punitive damages in a tort action is stated in the cases to be the same as the principal's liability for the acts of an agent under rules applicable to the relationship of principal and agent. 68 C.J.S., Partnership, § 168, page 616, and is liable only if he had knowledge of and participated in wrongful conduct or ratified such conduct. 25 C.J.S. Damages, § 125, page 733.

The rule in Texas is that the principal is liable for exemplary damages growing out of the act of an agent only where he authorized or participated in, or ratified the acts of the agent. 25 C.J.S. Damages, § 125(d), page 732, note 23; Larson v. Sterling, etc., Tex.Civ.App., 153 S.W.2d 177, syl. 7 error dism.; Bankers' Mortgage Co. v. Baxter, Tex.Civ.App., 66 S.W.2d 408; Commonwealth of Massachusetts v. Davis, 140 Tex. 398, 168 S.W.2d 216, syl. 20; Lusk v. Onstott, Tex.Civ.App., 178 S.W.2d 549, syl. 5; and Panola, etc. v. Corbin, Tex.Civ.App., 253 S.W.2d 688, error ref. In the record here it appears that W. Lee Moore, as a partner with his father now deceased, knew the general nature of the business, received salary checks from one or more of the loan offices, received part of the profits from one or more of such offices, and although he testified he did only what his father told him to do, the record further shows he held an interest in General Finance Loan since 1949; however was not active in the business before his father became ill the latter part of 1950. There is also testimony that he began to learn about his father's business about the first part of 1950. His father died January 22, 1951.

Under the above record we cannot say the trial court erred in his finding that W. Lee Moore, Jr., did not authorize, participate in, or ratify the acts of his father. No issue having been submitted

to the jury, the court's finding was binding. With reference to W. Lee Moore, Sr., the penalty abated at his death. As to the partnership, we also hold that the penalty liability terminated upon its dissolution. Points 4 and 5 are overruled.

Appellant Luther under his counter-points 1, 2, and 3 asserts: "The aforesaid causes of action arose out of a number of separate and distinct transactions entered into between appellant and the several appellee loan companies, separately and at many different times, for different amounts, and under different circumstances, no loan company being a party to the transaction with any other loan company."

The record here most favorable to the judgment rendered by the trial court is: (1) The pleading alleged a conspiracy by all appellees to wrongfully harass him; in connection with the common ownership of groups of the companies or loan offices, or single individuals appellees by contemporaneous and malicious collection methods by six of the seven loan companies resulting collectively in severe mental and physical damage; that appellant was called and harassed daily by one loan office after another in an almost identical manner; each reported to the Retail Merchants Credit Association claiming a debt but not describing the debt to be in part usurious interest; from all of which appellant and wife suffered both mental and resultant personal harm.

Appellants claim they were harassed continuously by six of said appellees daily by such a chain of calls, one after the other, resulting in their suffering headaches, vomiting spells, loss of weight, fatigue, and blackouts; that they cannot say which appellee caused which condition, but only that the actions of appellees acting jointly brought about the result; and that each, having acted with knowledge of the acts of the others, contributed to, and jointly with all others, caused the resulting damages.

Under the above pleadings, supported by evidence, we hold that the concert of action and unity of design between the appellees are circumstances from which the jury could reasonably conclude that the parties acted jointly, that they may be sued jointly, and each can be held for the joint damage done thereby. Landers v. East Texas Salt Water, etc., Tex.Sup., 248 S.W. 2d 731, and 17 Texas Law Review 399, 27 Texas Law Review 732, cited in the Landers case. Cross points 1, 2, and 3 are overruled.

For the reasons stated, the judgment below must be modified to allow a full recovery for the amounts found by the jury.

After the judgment is so reformed to conform to the verdict of the jury, we are of the opinion that the judgment is excessive in all sums in excess of the following amounts: (1) Paul A. Luther and Mrs. A. B. Luther, d/b/a Reserve Loan Service, the sum of $1,847; (2) Paul A. Luther and Mrs. A. B. Luther, d/b/a Citizens Service Co., the sum of $1,770; (3) General Finance Loans and W. Lee Moore, individually and as independent executor of the estate of W. Lee Moore, deceased, the sum of $1,207; (4) E-Z Finance Co. and W. Lee Moore, individually and as independent executor of the estate of W. Lee Moore, deceased, the sum of $1,169; (5) Acme Company Loans and W. Lee Moore, individually and as executor of the estate of W. Lee Moore, deceased, the sum of $1,150; (6) Texas State Finance Co. and W. Lee Moore, individually and as independent executor of the estate of W. Lee Moore, deceased, the sum of $1,150. (7) All costs in the court below, and in this Court, are apportioned equally against the several appellees.

If a remittitur is filed within ten days from this date as above indicated, the judgment below, as reduced by such remittitur, will be affirmed; otherwise the judgment of the trial court will be reversed and the cause remanded to the District Court for another trial.

DIXON, C. J., concurs.

YOUNG, J., being of the opinion we are without jurisdiction of this appeal, took no part in the disposition of cause on the merits.

DIXON, Chief Justice (concurring).

It was my intention not to participate in this appeal, for I was the Judge of the 95th District Court when the case was originally tried. However our Supreme Court in an opinion by Chief Justice Gaines has made this holding: "The grounds of disqualification of the judges of the courts in this state are specified in the constitution, and they are exclusive of all others; and the fact that a judge may have tried the case in a lower court, or participated in the decision in such court, is not made one of them. Const. art. 5, § 11; Taylor v. Williams, 26 Tex. 583. Therefore we are clearly of the opinion that Judge Williams was not only not disqualified, but that, since Judge Brown and myself could not agree upon a decision of the case, it was his duty to act." Galveston & H. Inv. Co. v. Grymes, 94 Tex. 609, 64 S.W. 778. Since my colleagues have not been able to agree as to the proper disposition of the appeal it now becomes my duty to act notwithstanding my reluctance to do so. The parties at interest are entitled to have this court render a decision on the appeal and my participation furnishes the only method by which a disposition can be accomplished. Burrage v. Hunt Production Co., Tex.Civ. App., 114 S.W.2d 1228.

I agree with Justice Cramer as to the disposition of the appeal.

It is of course well settled in Texas that a recovery of damages will not be allowed for fright or nervous shock or mental suffering alone. Harned v. E-Z Finance Co., Tex.Sup., 254 S.W.2d 81.

However it is equally well settled in this state that a recovery of damages will be allowed when physical injuries such as headaches, vomiting spells, loss of weight, fatigue, blackouts, or derangement of the nervous system, have been proximately caused by fright or nervous shock induced by negligent or intentional misconduct, though there may not have been any actual physical contact or impact. In a comparatively recent case our Supreme Court has again so held in an opinion in which the subject is discussed at some length, and numerous authorities are cited, many of them Texas cases. Houston Electric Co. v. Dorsett, 145 Tex. 95, 194 S.W.2d 546. Also see Levine v. Trammell, Tex.Civ.App., 41 S.W.2d 334, Ref.; St. Louis Southwestern Ry. Co. v. Murdock, 54 Tex.Civ.App. 249, 116 S.W. 139, Ref.; Hendrix v. Texas & P. Ry. Co., 40 Tex.Civ.App. 291, 89 S.W. 461; Yoakum v. Kroeger, Tex.Civ.App., 27 S.W. 953.

Justice Cramer is undoubtedly correct in his statement that upon appellant's refusal to agree to a remittitur I as trial judge might have set the judgment aside and granted a new trial, but that I did not have authority to reduce the amount of appellant's judgment. My action in reducing the amount of the judgment was an error against appellant of which he is entitled to complain on appeal.

Of course this court too has authority to suggest a remittitur, and if appellant refuses, this court may reverse and remand the case for another trial. I still believe the verdict was excessive. Justice Cramer also thinks that it was. Therefore I agree that if appellant refuses to agree to the remittitur the case will be reversed and remanded.

CRAMER, Justice (on motion to dismiss).

Appellees in a separate motion insist that we have not acquired jurisdiction of this appeal, and pray that the appeal be dismissed.

The facts material to show our jurisdiction are: Final judgment was signed by the trial court March 3, 1953. Appellant's affidavit for costs was filed March 13, 1953, clearly within the 20 days allowed under Rule 356(b). The affidavit was duly contested and thereafter the contest was sustained by the trial court to the extent that appellant was able to make a $250 deposit,

under Rule 355(f). Appellant then filed in this Court an application for mandamus to require the trial court to overrule the contest without the $250 deposit requirement; in other words, overrule the contest unconditionally. This Court after hearing granted the writ as prayed for on May 5, 1953. Appellees' first motion was overruled June 26, whereupon they filed second motion for rehearing which this Court entertained and overruled July 17. See Wright v. Peurifoy, Tex.Civ.App., 260 S.W.2d 234. The trial court complied with our writ by entering an order setting aside its former order and sustaining the affidavit for costs unconditionally on August 3, 1953. On August 3, 1953 the original transcript was filed in this Court, having been tendered May 28, 1953. A statement of facts was filed Sept. 28, and a supplemental transcript on Nov. 18th.

Appellees in their motion to dismiss cite and rely on Rules 354, 356, and 363, V.R.C.P.; Hugle v. Fritz Motor Co., 117 Tex. 411, 6 S.W.2d 84; Brandon v. Tartt, Tex.Civ.App., 220 S.W.2d 672; Garvin v. Hufft, Tex.Civ.App., 243 S.W.2d 391; Maples v. Service Mutual, etc., Tex.Civ.App., 169 S.W.2d 500, error dis.; 4 C.J.S., Appeal and Error, § 521, page 981; City of Waco v. Roberts, 121 Tex. 217, 48 S.W.2d 577, 580; Vinson v. McPherson, Tex.Civ.App., 54 S.W.2d 829; 3 C.J. 1183; 4 C.J.S., Appeal and Error, § 565; McAfee v. Shirley, Tex. Civ.App., 140 S.W.2d 932; Equitable Life, etc., v. Murdock, Tex.Civ.App., 219 S.W.2d 159; and Plummer v. Van Arsdell, 117 Tex. 200, 299 S.W. 869. We have reviewed each of appellees' cited authorities and have reached the conclusion that they are not in point here. Most of them involve only the question of extension of time for filing an appeal bond after a contest of an affidavit for costs has been sustained too late to file the appeal bond. They are each correct under the situation there involved and the applicable rules then in force, but have no application here.

Rule 355, V.R.C.P., in connection with the situation here has been twice construed by the Subcommittee on Interpretation of the Texas Rules of Practice and Procedure. Such opinions being reported in 7 Texas

Bar Journal 118 and in 8 Texas Bar Journal 45. Material here, the Committee was asked the question: "* * * (2) When a contest is filed under Rule 355 can the court set and hear the contest immediately, or is it necessary to wait ten full days from the filing of the contest or from the date of notice?" The Committee answered the question: "In regard to the second question it is the opinion of the Subcommittee that the hearing upon a contest may be had after reasonable notice of the setting, without waiting for a ten-day period to elapse. The rule provides that a court officer or a party to the suit may contest the affidavit within ten days after the giving of such notice 'whereupon the court * * * shall set the contest for hearing.' The ten-day period applies to the time allowed for filing a contest, but after a contest is filed the court can hear same at any time upon reasonable notice." And in the opinion in 8 Texas Bar Journal, at page 45, the question was: "2. When a contest is filed under Rule 355 can the court set and hear the contest immediately, or is it necessary to wait ten full days from the filing of the contest or from the date of notice?" To which the Subcommittee answered: "2. In regard to the second question it is the opinion of the Subcommittee that the hearing upon a contest may be had after reasonable notice of the setting, without waiting for a ten-day period to elapse. The rule provides that a court officer or a party to the suit may contest the affidavit within ten days after the giving of such notice 'whereupon the court * * * shall set the contest for hearing.' The ten-day period applies to the time allowed for filing a contest, but after a contest is filed the court can hear same at any time upon reasonable notice."

The opinions of the Subcommittee are in our opinion correct interpretations of Rules 355 and 363, and applying the rule there laid down, the affidavit for costs having been finally overruled by the trial court (in compliance with our mandate) on August 3, 1953, the record was filed in his court within the time required by Rule 386, since our orders extending the time until

after the contest was overruled were based upon good cause why it could not be sooner filed, as the term good cause is used in Rule 386.

In my opinion there is no error shown by the motion to dismiss and it should therefore be overruled.

DIXON, C. J., concurs in the result.

YOUNG, J., dissents.

DIXON, Chief Justice (on motion to dismiss).

I was the trial Judge before whom this case was tried. For that I reason I preferred not to participate in the proceedings pertaining to this motion. However Justices Young and Cramer have not been able to agree as to what should be done about it, so, notwithstanding my reluctance, it is my duty to take part in the disposition of the motion. Galveston & H. Inv. Co. v. Grymes, 94 Tex. 609, 64 S.W. 778; Burrage v. Hunt Production Co., Tex.Civ.App., 114 S.W.2d 1228.

I agree with Justice Cramer that appellees' motion to dismiss should be overruled.

Appellees contend that if a contest of an affidavit of inability to pay costs is overruled at any time after thirty days from the time the motion for new trial is overruled, such action comes too late, and this Court does not acquire jurisdiction of the appeal.

Rule 363 is very plain as to when an appeal is perfected. If an affidavit in lieu of a bond is contested the appeal is perfected "when the contest is overruled." The above quoted words were added to the Rule by an amendment in 1941. In this case Judge Peurifoy, in conformity to our mandate, overruled the contest August 3, 1953. In my opinion that is the date when the appeal was perfected.

The case of Hugle v. Fritz Motor Co., 117 Tex. 411, 6 S.W.2d 84, cited by appellees, is not in point. It construed statutes materially different from Rules 355, 356, and 363. Under the statutes then in effect an affiant, even in the absence of a contest, was required to obtain a hearing on his affidavit and have it approved following the hearing. The statutes have since been repealed. Rule 355(e) on the contrary expressly provides that where no contest is filed in the allotted time the allegations of the affidavit shall be taken as true. The opinion in the Hugle case was delivered prior to the promulgation of Rule 363 as amended in 1941.

Under appellees' interpretation of the Rules deserving and diligent litigants could and doubtless would sometimes find themselves in position where, through no fault of their own, an appeal would be impossible. They would be without a remedy in either the trial court, or this court.

A hypothetical case will illustrate my point. Suppose a litigant desiring to appeal files his affidavit of inability to pay costs on the twentieth day after his motion for new trial is overruled. He cannot fairly be charged with lack of diligence in waiting until the twentieth day, for Rule 356(b) allows him that much time. Moreover under our law it is his duty to try to make bond. Certainly twenty days is not too long a time to allow him to explore and exhaust the possibilities of raising the money, or obtaining sureties for an appeal bond. A litigant who filed his affidavit immediately upon the overruling of his motion and the fixing of the amount of his appeal bond might well find it difficult to convince anyone that he had made a bona fide effort to make a sufficient appeal bond. Furthermore under Rule 355(e) until a contest is filed his affidavit is accepted as true. So unless he knows in advance that a contest will be filed, he would not likely incur the expense and labor of preparing to prove up his affidavit.

A contest need not be filed until ten days after notice is given of the filing of the affidavit. In our hypothetical case, even if notice were given the very same day, the contestant could wait ten days under Rule 355(c), V.R.C.P. to file his contest. Thus

the contest in our hypothetical case could be filed at any hour of the day on the thirtieth day after the overruling of the motion for new trial. Is it reasonable to say that the affiant must obtain a hearing on the contest that very day else lose his appeal? I think that under such circumstances and such an interpretation of the Rules, it would not only be an unreasonable requirement —it would also be a requirement with which deserving litigants might often find it impossible to comply.

I have not changed my mind about the validity and propriety of our order granting appellant a writ of mandamus, Wright v. Peurifoy, Tex.Civ.App., 260 S.W.2d 234. At the hearing of the contest of appellant's affidavit, appellant gave clear, positive, detailed testimony as to his income, debts, and property, and his efforts to raise money to make bond for this appeal. He gave the names of his creditors and the amounts he owed. The truth of his statements could easily have been checked. But contestants did not attempt to discredit or contradict the testimony of appellant as to the material facts—facts which I believe permit of only one inference. Under such circumstances the testimony of appellant, though he was an interested party, must be accepted as true. McGuire v. City of Dallas, 141 Tex. 170, 170 S.W.2d 722; Bartsch v. Ruby, Tex.Civ. App., 229 S.W.2d 105; Wells v. Smith, Tex.Civ.App., 144 S.W.2d 430, Dis.Judgm. Cor.; Century Ins. Co. v. Hogan, Tex.Civ. App., 135 S.W.2d 224; Luling Oil & Gas Co. v. Edwards, Tex.Civ.App., 32 S.W.2d 921, Error Dism. I quote from page 926 of 32 S.W.2d of the last cited case: "The rule that the uncorroborated testimony of interested witnesses, although not controverted, does not conclusively establish a fact, is not applicable where the nature of the testimony is such that it might readily be discredited, if it were not true, and the adverse party offers no disparaging proof whatever." The fact that appellant requested permission to make payment of $250 instead of giving security therefor, is not evidence of his ability to raise that much cash in the short time allowed him. It is rather evidence of his good faith and

desperate hope. It shows merely that he desired and was willing to comply with the court's order if he should succeed in raising the money.

I concur in overruling appellees' motion to dismiss.

YOUNG, Justice (dissenting).

Upon further study of the record pertinent thereto, I conclude that the motion of appellees seeking dismissal of cause for want of jurisdiction should be sustained.

Rule 354, T.C.P., "Cost Bond," relative to perfecting appeal, provides in part: "* * * or in lieu of a bond, appellant may deposit with the clerk cash equal to the estimated costs, less such sums as have been paid to the clerk by appellant on the costs, and in that event the clerk shall file among the papers his certificate showing that the deposit has been made and copy same in the transcript, and this shall have the force and effect of an appeal bond." Rule 355, under which appellants sought to appeal, headed "Party Unable to Give Cost Bond", provides: "(a) When the appellant is unable to pay the costs of appeal or give security therefor, he shall be entitled to prosecute an appeal by filing with the clerk his affidavit stating that he is unable to pay the costs of appeal or any part thereof, or to give security therefor. (b) The clerk shall forthwith give notice of the filing of such affidavit to the opposing party or his attorney. (c) Any interested officer of the court or party to the suit, may, by sworn pleading, contest the affidavit within ten days after the giving of such notice whereupon the court trying the case (if in session) or (if not in session) the judge of the court or county judge of the county in which the case is pending shall set the contest for hearing, and the clerk shall give the respective parties notice of such setting. (d) Upon such hearing the burden of proof shall rest upon the appellant to sustain the allegations of his affidavit. (e) Where no contest is filed in the allotted time the allegations of the affidavit shall be taken as true. (f) Where the appellant is able to pay or give security for a part of the costs

of appeal he shall be required to make such payment or give such security (one or both) to the extent of his ability. As amended by order of Oct. 10, 1945, effective Feb. 1, 1946." And Rule 363 states that "The appeal is perfected when the notice of appeal is given and the bond or affidavit in lieu thereof has been filed, or if affidavit is contested, when the contest is overruled. * * *"

Final order of the District Court herein and basis of appeal was dated March 3, 1953; and steps taken pursuant to the foregoing Rules were as follows: Affidavit of inability to pay costs of appeal filed March 13; contests by the District Clerk and others, on March 20th; Judge Peurifoy fixing a hearing thereon for March 27. In the meantime, appellant's attorney advised the court that because of another matter in conflict, he desired a postponement of the proceeding until April 3, at which time the contest was actually heard; the order sustaining same reading in part: "The court further finds that the plaintiff is not unable to pay the costs of appeal or any part thereof, or to give security therefor. On the contrary the court is of the opinion and finds that the plaintiff is able to pay or give security for a part, to-wit: $250 of the cost of appeal and plaintiff should be required to make such payment or give security to the extent of his ability. The plaintiff, in open court, requested that he be permitted to make payment of said $250 instead of giving security therefor."

It will be noted that the 30 day period within which to file cost bond on appeal expired on April 2; the instant hearing on appellant's own request being had on the 31st day. Also to be observed, is the fact that one attempting to appeal on affidavit is required to file the paper not more than 20 days from date of "such final judgment or order"; the additional 10 days being obviously the time set apart for contest, if any. The only exception to this time schedule relates to circumstances *beyond control* of the parties; as illustrated in Smirl v. Globe Laboratories, 144 Tex. 41, 188 S.W. 2d 676, where Rule 434 was made applicable, same providing in part: "* * * that

if the erroneous action or failure or refusal of the trial judge to act shall prevent the proper presentation of a cause to the Court of Civil Appeals, and be such as may be corrected by the judge of the trial court, then the judgment shall not be reversed for such error, but the appellate court shall direct the said judge to correct the error, and thereafter the Court of Civil Appeals shall proceed as if such erroneous action or failure to act had not occurred."

Here appellant not only caused the contest to be set for hearing *after* expiration of the thirty-day period, but suffered an adverse ruling, i.e., compliance with Rule 355 (f) was required. A situation quite analogous was presented in Brandon v. Tartt, Tex.Civ.App., 220 S.W.2d 672; the court there holding: "We are convinced that the appellant has failed in his efforts in perfecting an appeal to this court. It was said by the court in Maples v. Service Mutual Insurance Company of Texas, Tex.Civ. App., 169 S.W.2d 500 that an appeal bond or affidavit is a prerequisite to the perfection of the appeal and is therefore made jurisdictional and that the time for filing the bond is fixed absolutely without power in any court to extend it. * * * When appellee filed his affidavit controverting the affidavit of appellant of his inability to pay the cost of the appeal or give security therefor the burden rested upon appellant to establish his right to appeal under the affidavit filed by him and is governed by the rule announced in Hugle v. Fritz Motor Co., 117 Tex. 411, 6 S.W.2d 84, 85, wherein it is announced that *'action by a trial court in hearing an appellant's or plaintiff in error's proof under this statute is unauthorized unless that action be properly invoked by such appellant or plaintiff in error prior to the expiration of the period of time allowed by law for the filing of his appeal bond, or writ of error bond, as the case may be.'* The appellant relied upon his affidavit of his inability to pay the cost of appeal or to give security therefor until the time for filing an appeal bond had elapsed. Upon the hearing the trial court denied the appellant the right to appeal upon such affidavit. The filing of an

appeal bond by appellant thereafter, which was more than 30 days after the overruling of his motion for new trial, does not confer jurisdiction upon this court to pass upon the merits of the appeal." (Emphasis mine.)

The wording of Rule 363 is that "appeal is perfected when the notice of appeal is given and the bond or affidavit in lieu thereof has been filed, or if affidavit is contested, when the contest is overruled"; and in view of the language quoted, it is the position of appellant, in effect, that the mandamus proceedings (as a result of which Judge Peurifoy on August 3, 1953 was directed by this Court to set aside his order of April 3 and overrule the contest) were in substitution for the judgment that the trial court should have rendered on April 3, 1953, and sufficient under Rule 363 for purpose of jurisdiction.

The writer, although a member of the Court then entertaining said proceedings in mandamus, now concludes that our favorable action thereon had no more validity than the ruling of Judge Peurifoy which it intended to replace. For on that date (April 3) the trial court had lost jurisdiction to hold a hearing or make any order at all. However, as pointed out by defense counsel, "appellant did not lose his right of appeal by any erroneous judgment of the trial court in appraising his evidence. He lost it by lapse of time."

But even assuming validity of the April 3 procedure, in my opinion, this Court invaded the province of respondent court as a trier of the facts and judge of the weight and credibility of interested testimony, when it directed him to reverse his action sustaining the contest. Such trial court order was not appealable; the alternative remedy of mandamus not being available unless the truth of affiant's inability to pay costs be established beyond dispute. Burleson v. Rawlins, Tex.Civ.App., 174 S.W.2d 979. After careful consideration of the testimony had on hearing of contest, I conclude that contrary inferences may be drawn from the testimony of E. Roy Wright (earning at the time from $300 to $350 per month), and that the action of Judge Peurifoy adverse to appellant, cannot be characterized as an abuse of discretion; especially so, where, as here, plaintiff had requested in open court for permission "to make payment of said $250 instead of giving security therefor." The San Antonio Court's holding in Schnitzer v. Richardson, Tex.Civ.App., 142 S.W.2d 958, is likewise controlling of the considered action of respondent trial judge; with result that relief by way of mandamus ought to have been denied. Says that Court: "On the other hand, the question of relator's inability to pay or secure all or a part of the costs of appeal is primarily one of fact to be determined by the trial judge from evidence adduced upon the hearing of a contested affidavit of inability. On the hearing in this instance relator testified at length upon that issue. If full favorable effect be given his testimony and all deducible inferences therefrom, he would be entitled to the right of appeal under the statute. But it is obvious that the trial judge did not give full credence to all relator's testimony, but, on the contrary, *found as a fact therefrom that relator was able to pay or secure at least a part of the costs of appeal.* Looking at the record as presented, we cannot say, as a matter of law, that the trial judge (presumably acquainted with the parties and their situations, and seeing and hearing the witnesses testify upon the issue) abused his discretion in holding that the evidence showed relator is able to pay or secure a part of the costs of appeal. This being so, this Court is without authority to require the officers of the trial court to furnish a free record to relator to enable him to prosecute an appeal in the case." (Emphasis mine.)