**Opinion issued October 28, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-25-00390-CV

———————————

## IN RE CHERYL VERRET, Relator

---

### Original Proceeding on Petition for Writ of Mandamus

---

## CONCURRING OPINION

The judge presided over a bench trial and signed a final judgment, but she later left office before plenary power expired. Her successor, who had not sat through any of the trial, used that plenary power and ordered a new trial. Relator assails that order by petition for writ of mandamus.

Mandamus would be cognizable if the first trial had been to a jury, but things become murkier when the trial takes place non-jury. Does the removal of the jury matter to the availability of mandamus relief?

The courts of appeals tend to think so.[1] They allow mandamus if the new trial order threw out a jury verdict, but not otherwise. After all, the last 20 years of supreme court decisions in this area stress the value of the right to a jury trial, based on the historic role of juries in American law.[2] It is hard to make the same case for non-jury trials. For this reason, denying relief appears to be proper. *See Ospina v. Garcia Florez*, No. 01-19-00465-CV, 2021 WL 2149334, at *4 (Tex. App.—Houston [1st Dist.] May 27, 2021, pet. denied) (mem. op.) ("This case does not involve the same concerns that *In re Columbia Medical Center* presented. This is not a situation in which the trial court granted a motion for new trial and set aside a jury verdict without stating its reasons beyond 'in the interests of justice and fairness.' Rather, the divorce case was tried to the bench, not a jury.").

This conclusion admittedly gives me some pause. Relator notes the anomaly that occurs when a new judge overturns the old judge's work without having heard the evidence. Fair enough, but that anomaly largely comes as a fact of life. Every

---

[1] *See, e.g.*, *In re Velasquez*, No. 04-25-00091-CV, 2025 WL 1063434, at *4 (Tex. App.—San Antonio Apr. 9, 2025, orig. proceeding) (mem. op.); *In re Foster*, No. 05-15-00179-CV, 2015 WL 682335, at *1 (Tex. App.—Dallas Feb. 18, 2015, orig. proceeding) (mem. op.); *In re Old Am. Cnty. Mut. Fire Ins. Co.*, No. 13-13-00644-CV, 2014 WL 1633098, at *10–11 (Tex. App.—Corpus Christi–Edinburg Apr. 23, 2014, orig. proceeding) (mem. op.).

[2] *See In re Rudolph Auto., LLC*, 674 S.W.3d 289, 299–302 (Tex. 2023) (orig. proceeding); *In re Bent*, 487 S.W.3d 170, 175–78 (Tex. 2016) (orig. proceeding); *In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 755–59, 762 (Tex. 2013) (orig. proceeding); *In re United Scaffolding, Inc.*, 377 S.W.3d 685, 686–87 (Tex. 2012) (orig. proceeding); *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 209 (Tex. 2009) (orig. proceeding).

time a new judge takes office, there is the possibility of undoing the rulings of a predecessor. Texas has accepted this anomaly as inherent in the system. Further, our system allows judges to sit for each other on various occasions. For instance, a judge with a medical issue might have a colleague sit in for a part of the trial. These things happen. *See id.* at *5.

Quite apart from the wrinkle of the successor judge, relator questions why non-jury cases should be exempt from mandamus review of new trial orders. One could easily make arguments for expanding mandamus beyond where the *Toyota* line of cases took it. Litigants in bench trials care just as much about the process, benefit just as much from a good explanation, and deserve just as much respect as litigants who put themselves upon the country.

However, if we were to open the door to extraordinary relief in non-jury cases, it would undermine the doctrinal framework of the *Toyota* line of cases. *Toyota* and its progeny placed jury trials on something of a pedestal. If we were to give identical treatment to non-jury trials, it would amount to putting all things onto pedestals, which really means putting none of them onto a pedestal.

When more years of experience in the post-*Toyota* world have accumulated, the supreme court will have the benefit of those years in evaluating how well the current approach has been working. But that is for another court and another day.

For the time being, my best reading of the high court's extant cases persuades me that those cases fit better with a mandamus denial here than with a grant.

All that said, Texas could improve the system with one simple step: allow for review of new trial orders by ordinary appeal after the second trial. This would not require expanding mandamus any further. It would simply require the parties to get back in the courtroom, get to final judgment without losing another year to mandamus struggles, and bring the matter up on appeal.

First, the federal courts have a good track record with allowing such review: "An order granting a new trial is not appealable, but it is certainly reviewable. On appeal from the final judgment following the second trial, the appellant may claim error in the grant of the new trial. If the appellate court agrees, it will reinstate the verdict reached at the first trial." 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE & ALLAN STEIN, FEDERAL PRACTICE AND PROCEDURE § 2818 (3d ed. 2025).[3]

Second, adopting the federal approach would strike a sensible balance. It would protect the right to a fair trial while also protecting the courts and the parties

---

[3] *See, e.g.*, *Latino v. Kaizer*, 58 F.3d 310, 314 (7th Cir. 1995) ("An order granting a new trial is not a final order within the meaning of 28 U.S.C. § 1291 and is therefore generally not immediately appealable. Nevertheless, after a new trial and entry of final judgment an appellate court entertaining an appeal from the final judgment may review the decision to grant a new trial and, where appropriate, reinstate the original verdict."); *Wallake Power Sys., LLC v. Engine Distribs., Inc.*, No. 22-3399, 2023 WL 3966740, at *5 n.7 (6th Cir. June 13, 2023) (similar); *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967) ("[I]t is clear that such orders [granting a new trial] are reviewable on appeal from the final judgment in the second trial.").

from the inefficiencies of mandamus practice.  Mandamus comes with costs.  For every petition that we grant, there may be ten or twenty more that we deny.  The success rate of mandamus petitions has historically been in the low single digits.  *See* Patricia J. Askew, *"Click Bait" for the Courts, and Other Mandamus Practice Tips* 44, State Bar of Texas, Advanced Trial Strategies Course (2025).  Perhaps the rate is higher for new trial grants, but whatever it is, some mandamus petitions will fail, with all the attendant expense in time and money.

That expense will be substantial.  Start with money.  To pursue mandamus review of an order granting a new trial, the seasoned practitioner typically files the entire trial record—every exhibit, every scrap of testimony, everything—rather than face the risk of the petition being dead on arrival for want of an adequate record.  The cost of getting a full record will outrun the cost of a discovery mandamus about overbroad interrogatories or the like.

Next comes lawyer time, which means more money.  Mandamus also takes up court time and resources.  In contrast to the era when my career began, today's appellate courts have more and more staff attorneys who do more and more mandamus, with some doing little else.

Finally, review by ordinary appeal after the new trial would be consistent with the twenty-first century world.  Although some older cases arguably foreclose the position taken here, those precedents strike me as obsolete.  Shortly before the dawn

of the *Toyota* era, Texas usually said no to review of an order granting a new trial. The two exceptions to that rule were so narrow as to be unworthy of attention here. *See Johnson v. Fourth Ct. of Appeals*, 700 S.W.2d 916, 918 (Tex. 1985) (orig. proceeding). The saying was that a trial judge could grant a new trial for good grounds, bad grounds, or coffee grounds.

The main precedent against ordinary appellate review was a default judgment case called *Cummins v. Paisan Construction Co.*, 682 S.W.2d 235 (Tex. 1984) (per curiam). There a trial court set aside a default judgment and proceeded to trial on the merits. *Id.* at 235. On appeal after the (only) trial, this Court examined the new trial order and found that the evidence supported setting aside the default judgment. *Id.* at 235–36; *see Cummins v. Paisan Constr. Co.*, 682 S.W.2d 323, 325–26 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.).

The supreme court denied review. Its short per curiam opinion stated that "the trial court's order setting aside the default judgment and granting the motion for new trial is not reviewable on appeal." *Cummins*, 682 S.W.2d at 235–36. The opinion stated that this Court reached the right result for the wrong reason. *Id.* at 236. Obviously, *Cummins* involved a default, not a trial to the bench, as occurred here, so it may well be distinguishable.

The world of *Cummins* traced back to at least 1961 and maybe even earlier.[4]

Today, however, it seems to me that the world of *Cummins* has ceased to exist. That world fell away with the most recent supreme court decisions, from the *Toyota* trilogy to *Bent* and *Rudolph*. So to the extent that the federal approach proposed here—allowing ordinary appeal after a second trial—faces a wall of older Texas cases, the proper response should be the phrase once spoken about a different barrier of roughly the same vintage: "Tear down this wall."

David Gunn
Justice

Panel consists of Justices Rivas-Molloy, Gunn, and Caughey.

Justice Gunn, concurring.

---

[4] The decision in *Cummins* relied on *Burroughs v. Leslie*, 620 S.W.2d 643, 644 (Tex. Civ. App.—Dallas 1981, writ ref'd n.r.e.), which in turn traced back to *Ebaugh v. State*, 342 S.W.2d 221, 222–23 (Tex. Civ. App.—Austin 1961, writ ref'd n.r.e.), but the reasoning of *Ebaugh* flows out of the old regime of courts losing powers after expiration of the "term" of court. *See Ebaugh*, 342 S.W.2d at 222–23. The *Ebaugh* decision arguably relies on a 1949 opinion from El Paso, which states:

> Under the seventh point we are asked to review the action of the trial court in granting a new trial after the first trial. The defendant in its brief concedes the matter of granting and refusing new trials is a matter within the discretion of the trial court and that no appeal lies from the order made granting the new trial, but it insists this court has the power now to consider the claimed error and to reverse the judgment rendered on the second trial and direct the reinstatement of the judgment first entered at the first trial. This we think may not be done. To do so would be to do indirectly what cannot be done directly. The concession disposes of the point.

*Equitable Life Assurance Soc'y v. Murdock*, 219 S.W.2d 159, 164 (Tex. Civ. App.—El Paso 1949, writ ref'd n.r.e.). But the El Paso opinion seems to be the view of one justice, not a holding of the court. *See id.* at 165 (McGill, J., concurring).